### HEBER JOHNSON v. THE STATE.

No. 17073. Delivered December 19, 1934.
Rehearing Denied February 6, 1935.

The opinion states the case.

*Storey, Storey & Donaghey,* of Vernon, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of robbery, and his punishment assessed at confinement in the state penitentiary for a term of five years.

The record shows that John Gilbraith and Everett Flowers were engaged in trucking cotton from Paducah to Houston during the fall of the year 1933. Everett Flowers was employed by N. L. Gilbraith, the father of John, as a truck driver. They hauled cotton for John and N. L. Gilbraith and some for the Goodman-Graham Gin Company. Upon reaching Houston they would sell the cotton, convert the checks which they received for the cotton into currency, and return home with the cash. On the night of December 18, while on their return trip, John Gilbraith, who had on his person the proceeds of the sale of cotton, which amounted to approximately $1,350.00, was robbed by some person who had mounted his truck, broken the glass window out of the back of the cab of the truck, pointed a pistol at him and commanded him to stick up his hands, which Gilbraith declined to do when the robber struck him on the head with the pistol, took the money from his person, and hurriedly departed. Gilbraith subsequently identified appellant by his voice as the party who robbed him. Everett Flowers testified that he and Heber Johnson had theretofore entered into an agreement to rob Gilbraith on one of his return trips from Houston. The understanding was that when Gilbraith and Flowers started on their return trip from Houston that Flowers was to send a telegram to Gladys Johnson, sister of the appellant, in which the appellant was directed to meet Flowers at a certain

point on the route home and which Gladys would make known to the appellant. On the night of the robbery Heber Johnson came to Wichita Falls, engaged a cabin at a tourist camp where he went to sleep, but before retiring requested the owner of the cabin to tell Flowers when he came along to wake him up. This message was delivered to Flowers, who complied with the request by awakening the appellant. The appellant then mounted the back of Flowers' truck and rode on the same until they came to an underpass near Oklaunion when Flowers signalled to Gilbraith to stop and when he did so Flowers drove up alongside of Gilbraith's truck so as to enable the appellant to step from Flowers' truck on to Gilbraith's truck. After they had left this point and driven about three-quarters of a mile, the robbery was consummated as hereinabove stated. The appellant did not testify but relied upon an alibi which he substantiated by the testimony of his father and which he claimed he could also have supported by the testimony of his mother if she had been physically able to appear in court. He also proved by Furnis Johnson, former husband of Gladys, that he was acquainted with Flowers; that he talked to Flowers at different times; that at one time Flowers told him about a scheme whereby they could make some money; that this happened some six or ten days prior to the date of the alleged robbery; that in this conversation Flowers told him that John Gilbraith wanted to be robbed, that he was willing to split the amount of money that was obtained in the robbery three ways after taking out the proceeds of the sale of his own cotton. Johnson told Flowers that he didn't want to be in it; that he never informed John Gilbraith of this conversation.

By bill of exception No. 1 the appellant complains of the action of the trial court in overruling his first application for a continuance on the ground of the absence of his mother, Lizzie Johnson, who was seriously ill at her home, confined to her bed and under the care of a physician; that he expected to prove by said witness and would prove by her if present at the trial that on the night the offense of robbery is alleged to have been committed, defendant spent all of that night at home; that he came home that evening about 9 o'clock P. M. complaining of a cold and hurting in his chest; that she knows that he was home all during that night because she attended him from time to time during the night, administering to his illness. To the application for a continuance appellant attached the affidavit of Lizzie Johnson, which contains the following: "This affiant further deposes under oath and says that the defendant, Heber Johnson,

came home that evening at 9 o'clock; that thereafter until daylight he was sick, threatened with pneumonia and suffering from pains in his chest and that she administered unto him from time time during that night and she knows he did not leave the house in which he was confined during that night between the hours of 9 P. M. and daylight." The appellant also attached to said application a certificate from Dr. Coleman who certified that Mrs. Johnson had been under his care for several months and for the past several days had manifested an extreme nervous state for which he had administered opiates; that she is mentally and physically unable to appear in court for at least ten days; that it would be dangerous to her health to require her to appear in court. This application was contested by the State on the ground that the facts stated in the application for continuance of what he expected to prove by the witness Lizzie Johnson are not true and that said witness would not so testify; that said witness testified before the grand jury wherein the said witness stated that she had no recollection of the whereabouts of this defendant on the night of December 18, 1933, and knew nothing whatsoever of the robbery or any facts pertaining thereto. The State further asserted in its contest that Lizzie Johnson was mentally incapable of making a competent witness, in this, that if she was placed on the witness stand in court she would become agitated and excited to such an extent that her mind would become impaired and her testimony untrustworthy of belief, and agreed that the deposition of the witness Lizzie Johnson might be taken and read to the jury upon the trial of the case.

Since the amendment of subd. 6 of art. 608, C. C. P., a continuance is not granted as a matter of right but is addressed to the sound discretion of the court called to pass upon the same. In the case of Wiley v. State, 36 S. W. (2d) 495, this court, speaking through Judge Lattimore on a motion for rehearing, said: " 'It is not in every case, however, even when the absent testimony is material and probably true, that this court will revise the ruling of the trial judge in refusing a new trial, considered with reference to the application for continuance. It is only in a case when, from the evidence adduced on the trial, we would be impressed with the conviction, not merely that the defendant might probably have been prejudiced in his rights by such ruling, but that it was reasonably probable that, if the absent testimony had been before the jury, a verdict more favorable to the defendant would have resulted, (citing authorities)."

In the case under consideration the State contested the application for continuance and introduced on the hearing of the contest the testimony of the absent witness given before the grand jury in which it appears that she testified that she had no recollection of the whereabouts of the defendant on the night of December 18th, the night the alleged robbery took place, and that she knew nothing whatsoever of the robbery or any facts pertaining thereto. This testimony given before the grand jury was contradictory of the facts stated by her in her affidavit which was attached to the application for continuance. Under the law the trial court is vested with a wide discretion in passing upon an application for continuance, and this court will not set aside the judgment of the trial court on a controverted issue, unless it is made clearly to appear that the trial court abused his discretion. In the light of the entire record before us we can not say that it is reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted. We therefore overrule the appellant's contention.

By bill of exception No. 2 the appellant complains of the action of the trial court in not permitting him to propound to the prospective juror J. A. White the following question: "In the event you are selected as a juror, and the court should charge you upon accomplice testimony and should instruct the jury that in order to convict the defendant that the jury must first believe that the accomplice testimony is true before you can convict the defendant, and if you didn't believe it was true, would you acquit the defendant, if the Court so charged you?"

The bill of exception is qualified by the trial court and the qualification shows that appellant was permitted to test the jurors' attitude toward the law and towards the Court's charge generally. It appears from the bill of exception that appellant was attempting to interrogate the prospective veniremen antecedent to the introduction of testimony as to their attitude on hypothetical questions of law and fact which might arise on the trial of the case. By his ruling the trial court violated no specific statute on the subject touching the juror's qualification, and the conduct of matters incident to the trial of the case must necessarily carry with it a certain amount of discretion on the part of the trial court. Each juror is required by law to take an oath that he will be governed by the law as given him in charge by the Court. Under such state of facts we do not believe the court committed any error, and in support of the views expressed we refer to the following cases: Hamilton v.

State, 74 Texas Crim. Rep., 219; Collins v. State, 77 Texas Crim. Rep., 157; Willis v. State, 91 Texas Crim Rep., 329; Merkel v. State, 75 Texas Crim. Rep., 551, 171 S. W. 738.

By bill of exception No. 3 the appellant complains of the action of the trial court in not permitting the witness Smith Mallow to testify to appellant's reputation for truthfulness and honesty. The appellant had already proved his good reputation as a law abiding citizen and if he had desired to prove a good reputation for honesty it might have been permissible, but his reputation for truth and veracity could not become an issue in the case until he had spoken in his own defense, which he declined to do. If he desired to prove his reputation for honesty, he should have confined himself to it and not coupled with it his reputation for truthfulness.

Bill of exception No. 9 relates to the same subject matter as bill of exception No. 2 and is overruled for the same reason.

Bill of exception No. 10 complains of the action of the trial court in permitting the State to introduce in evidence a certain telegram purporting to have been sent from Houston, Texas, on December 17th, to Heber Johnson at Vernon, Texas, which telegram reads as follows: "We leave here Monday morning. Arrive Wichita Falls about 9:30 Monday night. Everett Flowers."

This bill of exception is not signed and approved by the trial judge and therefore cannot be considered by this Court.

The objections addressed to the Court's main charge seem to be without merit in that the charge adequately submitted every issue raised by the testimony.

The closing argument of the district attorney complained of by appellant appears to us to be a proper deduction from the testimony adduced upon the trial.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant again urges that it was error to refuse him a continuance. In addition to what we originally said, and as upholding the discretion of the trial judge in his conclusion that there would likely not have been a

different result had the absent witness been present and testified, we observe that the State, in supporting its controversy of the application for continuance, presented the affidavits of two doctors who knew the absent witness,—who was appellant's mother,—both of whom swore that in their opinion, based on examinations, the absent witness was mentally incapable of making a credible witness, and that this condition was permanent. We further note that in the statement of said witness made before the grand jury in February, 1934, relating to the whereabouts of appellant on the night of the alleged robbery on December 18, 1933, she said that unless she was mistaken he was at home all day on the 18th, and that he generally slept with his father. This statement of her knowledge of appellant's whereabouts on the night of the robbery, was very different from the positive terms of the affidavit made by her in support of the application for continuance. Further upon the same question of the likelihood of her testimony causing a different verdict, we note that Gilbraith positively identified appellant as the man who broke the glass in the back of the cab of his truck and robbed him of a large sum of money about 2 or 3 o'clock A. M., on the night of December 18th, and that Flowers, the accomplice witness, swore that he picked up appellant that night at Wichita Falls and carried him on his truck to near the scene of the robbery, where Gilbraith was stopped on the road by witness blinking the lights on his truck,—an accustomed signal between them,—and that appellant, at said place of stoppage, got from witness' truck and on to the back of Gilbraith's shortly before the robbery. Flowers also swore that appellant's sister sent appellant a wire from Houston that they would be by Wichita Falls that night. The robbery of Gilbraith appears to have been planned by Flowers, appellant and the sister of appellant. A tourist camp man testified that a boy or man came to his camp that night and got a cabin, asking to be waked when Flowers came. He testified that when Flowers came witness told him the boy was in the cabin, and Flowers went back toward the cabin. It thus appears that no one could have known that Gilbraith would come by at that time of night except some man who had information. Who could have been on the back of Gilbraith's truck at such an hour in the night but some one who knew he had sold cotton and had money? The conclusion is forced that some one informed and acting with Flowers and appellant's sister, committed the robbery. We do not think there was any abuse of the discretion of the trial court in refusing the continuance.

Renewed complaint appears of the refusal of the trial court to charge on circumstantial evidence. The fact that Gilbraith told parties soon after the alleged robbery that he did not know who robbed him, and that on this trial he positively identified appellant, would in no way make the case one of circumstantial evidence.

It is now shown that bill of exception No. 10, referred to in our original opinion as not approved by the trial court,—was in fact so approved, the clerk of the court below having failed to properly copy said bill in the transcript. Complaint is made therein of the introduction in evidence of a certain telegram of date December 17th, addressed to Heber Johnson, Box 909, Vernon, Texas, which is copied in our former opinion. The statement of facts shows that the witness Flowers read or stated the contents of said telegram to the jury before the State offered same, and then said that Gladys Johnson told him, witness, that she sent it, and signed witness' name to it,—after which the State offered the telegram in evidence. Objection was made to the statement of Flowers that Gladys Johnson told him that she sent it, etc., also to the introduction of the telegram. It is the well settled rule in this State that what is done or said by any party to a conspiracy, in furtherance of or pursuant to the common object, if done or said before the conspiracy is consummated, whether done or said in the presence of other conspirators or not, is admissible against anyone or all of such conspirators. The subject is fully discussed in Sapp v. State, 87 Texas Crim. Rep., 606  That Gladys Johnson was a conspirator with Flowers and her brother, this appellant, appears reasonably plain, and her declaration concerning the telegram was of a fact in furtherance of said conspiracy. Said declaration described the telegram, and sufficiently identified it. Further, however, we note that appellant introduced a number of telegrams addressed to the same box number at Vernon, Texas, which were sent by Flowers to Gladys Johnson, appellant's sister, who appears to have lived at the same home as appellant in Vernon. There is another legal proposition involved which has application. The information in the telegram was acted upon apparently by appellant. He lived in Vernon, some fifty or sixty miles from Wichita Falls, the telegram being sent to Vernon. If Flowers' testimony corroborated by that of witness Weseman, be believed, appellant was in Wichita Falls waiting for Flowers and Gilbraith on the night of the robbery, same being the Monday night referred to in the telegram. The inference of receipt of the telegram by appellant is strongly

supported by his action in going to Wichita Falls that night. Terrell v. State, 88 Texas Crim. Rep., 599; Kachel v. State, 96 Texas Crim. Rep. 86; Hollingsworth v. State, 80 Texas Crim. Rep., 299. As said, in substance, by this Court in Conner v. State, 23 Texas App., 378, the chief object in the introduction of the telegram was to show that it was in fact received by appellant, was by him acted upon as a part of his conspiracy with Flowers, who was in Houston with Gilbraith,—the party who was known to Flowers to have the money, and who was to be in Wichita Falls that Monday night with Flowers. A qualification to this bill further states that it was shown to the trial court that said telegram was delivered at the home of appellant on December 18, 1933.

We have examined the record further in the light of appellant's insistence that the court should have more fully submitted the issue of his defense founded on the proposition that Gilbraith consented to the alleged robbery,—but we are not able to agree that the charge is erroneous upon this question. The facts in this case and that of Pate v. State, 239 S. W., 967, are wholly different. Said case was reversed on its facts, and it is true that in so doing we called attention to a charge in some respects like the one here given on the question of corroboration of an accomplice, which we criticised. Upon facts such as are before us in this case, we would not be inclined to hold such charge reversible error. We commend to the careful attention of trial judges what we said in the opinion in the Pate case, supra, in view of which there would seem small excuse for giving a charge which on facts less cogent than here, might necessitate a reversal. Fortunately in this case, in addition to the testimony of the accomplice, there was direct testimony from Gilbraith that appellant was the robber, and also other corroborative testimony.

We see nothing in appellant's complaint of paragraph 7 of the court's charge, which merely told the jury that if they did not find appellant guilty "Under the foregoing instructions, you will find him not guilty." In the foregoing instructions the court had applied the rule of reasonable doubt to the facts, as he did also in subsequent parts of the charge.

We have considered all the matters raised by appellant, but are constrained to believe the case correctly decided, and the motion for rehearing will be overruled.

*Overruled*