# JANUARY 2, 1946

## WILLIE CRUMPTON V. THE STATE.

No. 23253. Delivered January 2, 1946.

The opinion states the case.

*Letcher D. Kerig,* of Abilene for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the murder with malice of Bernice Crumpton and assessed a term of fifteen years in the state penitentiary, and he appeals.

The deceased was a woman whose maiden name seems to have been Bernice Coit, appellant claiming that she was his common-law wife and therefore her name was Bernice Crumpton. The indictment consisted of two counts, differing only in the name of the deceased; one count alleging her name to be Coit, and the other count alleging her name to be Crumpton. The trial court submitted the second count only in which the deceased's name appears to be Crumpton, and we find no objection thereto.

The State's testimony shows an unprovoked killing of this woman by her common-law husband in the following manner: The parties had been drinking and dancing at a negro dance hall and the deceased and two other women were in appellant's coupe just prior to going into the dance hall. They danced until nearly 12:00 o'clock midnight, when deceased and her two friends and appellant appeared near the car. Appellant and deceased were standing near the car talking and a witness heard appellant ask deceased if she didn't believe that he would shoot her, and her answer was "Yes," and about that time the witness heard three or four shots. Soon thereafter the deceased's body

was found on a shelf back of the seat in his coupe with a fatal bullet wound through the chest, there being another wound through the right arm.

Appellant's defense was that he saw his wife leave the dance hall and followed her; that he hid in the dark and watched her; that she was with a man named Shelley Ward and kissed and embraced him; that he shot at Ward, intending to kill him, but missed him and killed his wife accidentally. The testimony shows that appellant's pistol disclosed four exploded cartridges.

Appellant's attorneys introduced a written statement made by appellant to the Assistant District Attorney the day after the homicide in which he stated that he saw the transaction between his common-law wife and Ward, and "shot both of them with my pistol. I intended to hit either of them. Then Shelley Ward, whom I had missed with the first shot which hit Bernice, broke and ran. Bernice tried to get in the car, and I shot her in, I think, her right side. I was not drunk enough that I didn't know what I was doing, and it was my intention to kill both Shelley Ward and Bernice Coit."

It is worthy of note, however, that Shelley Ward denied that he was present at such scene, and the testimony of other witnesses relative to his presence at another place evidently had weight with the jury while considering appellant's defense as presented on the trial.

There are three bills of exception in the record.

Bill No. 1 complains of the overruling of appellant's designated third application for a continuance herein, and was based upon the failure to obtain the presence of two witnesses, namely, Matthew "Hardrock" Pink and Pauline Hamilton. It is evident that Pauline Hamilton appeared upon the trial of the case and testified, so that leaves only the witness Pink as absent at the trial. It is alleged in detail in such motion what the desired witness Pink would testify to, and such was in substance the same as appellant's own testimony herein. It appears from the record that at a former term of the court a continuance was had, possibly being based on the failure to locate the witness Pink, who was then thought to be in Toledo, Ohio, and at such former term, it was agreed by appellant's attorneys and the State's Attorney that appellant's attorneys would prepare written interrogatories to such witness; that the State's Attorney would pre-

pare cross interrogatories and same would be propounded to said witness. It was finally shown, however, that such witness appeared in Abilene, Taylor County, Texas, on February 14, 1945, prior to this trial, and came to the office of the District Attorney and stated that he knew nothing about this case, was not present when the shooting occurred and had not talked to appellant about the case, and such desired witness answered each and very direct and cross interrogatory propounded to him, and a copy thereof was attached to the State's motion controverting appellant's motion for a continuance. In these interrogatories the witness made it quite plain that he was not present at this homicide and knew nothing about the same, which testimony was in direct conflict with that of appellant. This application, although designated a third application, was by the court termed a fourth application and was by the court overruled. We think the court was correct in overruling such application, it being evident that the witness, Matthew "Hardrock" Pink, would not testify as was alleged in the motion.

Bill of Exception No. 2 relates to the testimony of a character witness, Frank Murphy, under whose supervision appellant worked at the Onyx Refinery Company, who testified that appellant's reputation as a peaceable, law-abiding negro prior to July 30, 1944, was good as far as he knew. He was not cross-examined by the State at such time, but was recalled the following day for cross-examination as follows:

· "Q. Now, you stated yesterday that you knew he was a peaceable, law-abiding citizen, is that what you stated yesterday? A. I never heard of him having any trouble, fights and things like that. I don't know of any trouble Willie has been in. I guess he has been arrested for bootlegging. I know that but I don't think he has given anybody any trouble, that I know of.

"Q. Well, a man that has been arrested for bootlegging—." at which time appellant's attorney objected, and after an exchange of remarks by both sides, the District Attorney withdrew the question and asked the following:

"Q. Now, the fact that you have heard about this law violation—about law violation on his part, you still think he is a peaceable, law-abiding citizen?"

After a further colloquy relative thereto, the trial court said:

"The question is his reputation as a peaceable, law-abiding citizen and not what this witness thinks, so I will not permit the question for that reason," to which ruling the State seems

to have endeavored to take an exception. It is here worthy of note that appellant's attorneys did not object to the answer of the witness Murphy, but only to the District Attorney's question which referred to the unobjected to statement of Mr. Murphy, and the request was made that the court instruct the jury not to consider such question for any purpose.

Bill of Exceptions No. 3 seems to be based upon the court's failure to instruct the jury not to consider for any purpose the State Attorney's repetition of the statement of the witness Murphy about the witness having heard of the appellant's bootlegging experience. It will be noticed that such a statement relative to appellant's bootlegging experience came as a voluntary statement of Mr. Murphy's and was not drawn out by, nor responsive to, any question by the District Attorney, and was only attempted to be referred to by the District Attorney, who was interrupted by appellant's attorney while proceeding to ask a question which was not completed. We think that the witness could have been asked in good faith by the State, in order to test his credibility and sincerity, whether he knew of appellant's bootlegging experience, not for the purpose of affecting appellant's credibility at such time, but in order to test the means of knowledge and sincerity of the witness when he testified as to appellant's good reputation as a peaceable and law-abiding citizen. It is evident from a perusal of this bill that the witness did not answer the uncompleted question, that the uncompleted question was withdrawn, and the court refused to permit the same to be asked. The final question objected to being: "Q. Now, the fact that you have heard about this law violation—about law violation on his part, you still think he is a peaceable, law-abiding citizen?" which question was objected to and an answer thereto not permitted by the court, as is shown in the quotation of the court's ruling in regard to Bill No. 2, supra. We see no error in either bill. See Stewart v. State, 188 S. W. (2d) 167, and cases there cited.

It is noticed that in applying the terms of the Indeterminate Sentence Law to the judgment and verdict herein, the trial court sentenced appellant to the state penitentiary for a term of not less than five nor more than fifteen years therein. The lowest term for murder is two years. (Art. 1257, P. C.) The sentence will therefore be reformed to direct the confinement of appellant in the state penitentiary for a term of not less than two years nor more than fifteen years, and as thus reformed, the judgment is affirmed.