## EB HALL v. STATE.

No. A-10892. July 21, 1948.
(196 P. 2d 703.)

R. A. Howard, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Eb Hall, was charged by information filed in the district court of Carter county with the crime of assault with intent to kill, was found guilty of the lesser offense of assault with a dangerous weapon, and the punishment left to the court; the trial court thereupon, sentenced the defendant to serve two years' imprisonment in the State Penitentiary, and he has appealed.

It is only necessary that we consider one of the assignments of error in the brief of defendant. It is contended that the court committed reversible error in denying the motion for continuance filed by defendant.

The information charged that the defendant did, on the 22nd day of April, 1946, shoot at one May Emberlin with a 30 - 30 rifle with intent to kill the said May Emberlin.

The defendant was arraigned in the district court on September 27, 1946, and entered his plea of not guilty to said charge. His case was then assigned for trial on October 14, 1946. Thereafter, on October 7, 1946, counsel for the defendant caused to be issued subpoenas for certain witnesses to testify on behalf of defendant. Among these witnesses were J. A. Wells and Mr. and Mrs. Conn Adams. On October 11, 1946, the sheriff made his return on the subpoenas stating that the witnesses, J. A. Wells, Conn Adams, and Mrs. Conn Adams,

could not be found in his county. When the case was called for trial on October 14, 1946, according to present counsel for defendant, J. B. Champion, attorney for defendant, who had issued the subpoenas, was allowed to withdraw as counsel for the defendant. The defendant being unable to employ counsel, the court thereupon appointed his present counsel, R. A. Howard, to represent him and passed the case until 2:00 p. m. on that date. When the case was again called for trial at 2:00 p. m., counsel for defendant presented a written motion for continuance which said motion reads as follows:

"Comes now the defendant Eb Hall in his own proper person, and moves the court to postpone the trial of this cause for the following reasons, to wit:

"1. That he cannot safely go to trial herein without the presence of Conn Adams and his wife Edna Adams who are material witnesses for and on his behalf, and if present would testify that they were at the home of the defendant on the day and date of the alleged assault; that they had come to the home of the defendant that morning, and were in the home of the defendant and that the defendant was in the house with said witnesses, that they all heard some shooting near the house and run out to see what was going on, and that they saw the complaining witness about a quarter of mile from the home of defendant, and that they saw the smoke of the gun that had been fired; that the complaining witness May Emberlin east of defendant's home and was encouraging her dogs to run defendant's cattle, that the dogs were south and a little east of defendant's home, and that between where the dogs and cattle were and the house where witnesses were they saw one Jimmie Glenn Hall with a gun, and saw the smoke of the gun, and that at no time did the defendant have his hands on a gun at the time of the alleged assault. Defendant says that said witnesses lived at Tussey, just across the line in Garvin County, Oklahoma, and just recently went to work at or near Bristow as defendant is informed and believes,

that they still live at or near Tussey, and are away only temporarily, and that if this case is postponed until another term of court, or until the next docket, said witnesses can be procured; that on October 7th, 1946 he caused a subpoena to be issued for said witnesses and that on the 11th day of October, 1946 he learned that said witnesses had left their home at Tussey, and has been unable to find them, and that he cannot go to trial without said witnesses, that there is no other person by whom he can prove said state of fact. That said testimony of said witnesses is true, and material to this defendant's defense.

"Wherefore defendant prays that this cause be continued to another term of court when said witnesses may be procured."

"Eb Hall, Defendant"

This motion was overruled with an exception allowed to the defendant.

May Emberlin testified that she lived in Garvin county; that she owned ten acres of land just across the section line from her home in Carter county; that this ten acres of land joined an 80-acre farm where the defendant Eb Hall lived; that on April 22, 1946, five head of cattle belonging to Hall had gotten into a patch of grain belonging to her and her husband on the ten acres; that she took her dogs and hissed the dogs on to the cattle to run them out of the field; that she saw the defendant over near his house about 150 yards away and that he yelled at her to leave that stuff alone and then he fired; that she hissed the dogs on the cattle again and defendant fired again; that after the second shot she turned and went back to her house.

J. C. Moore, son-in-law of May Emberlin, testified that he was at her place on the morning of April 22, 1946; that he heard a gun fired twice and saw the de-

fendant with the gun which he thought was a high powered rifle of some kind.

G. E. Emberlin, husband of May Emberlin, said that he was feeding his livestock and heard a gun fire; that he walked out of his feed lot and saw the defendant take another shot at his wife; that he had a rifle of some description in his hand; that he could see the defendant point the gun toward his wife and saw the smoke come out of the barrel. This was all the evidence on behalf of the state.

On behalf of the defendant, Jimmie Glenn Hall testified that he was the son of defendant; that on April 22, 1946, he saw Mrs. Emberlin chasing some cattle belonging to him and his father out in their field; that he had a 4-H Club calf in the bunch; that his attention was first attracted by hearing the dogs bark at the cattle; that he went into the house and got a shotgun and fired two shots at the dogs; that his father was in the house at the time he did the shooting and that his father did not fire any shots at all that morning; that they did not own a rifle of any description; that J. C. Moore, son-in-law of the prosecuting witness who testified in her behalf, came up the road in his car going to the Emberlin house after the shooting had occurred and that he could not have seen the shooting.

The defendant testified that on the morning of April 22, 1946, he had some alfalfa hay which had been cut and needed to be baled; that he had hired J. A. Wells and Conn Adams to do the baling and they were at his house together with Mrs. Conn Adams; that an early morning shower had fallen and it was too wet to bale; that he heard two shots fired and went out into the yard and saw his son, Jimmie, in the wheat field about 150

yards southeast of his house over near the fence; that he saw Mrs. Emberlin on the east side of the field back near her place; that his son, Jimmie, had discharged a twelve gauge shotgun twice at the dogs which were chasing the cattle, but the dogs were so far away that the shotgun did not have any effect on them; that he did not own a rifle at the time of the shooting, but had sold his rifle the year before to Cain Miller just before the opening of the deer season.

After a motion for new trial was filed, counsel for the defendant filed two affidavits in support thereof which read as follows:

".J. A. Wells, of lawful age, being first duly sworn, deposes and says: That he resides in Tillman County, Oklahoma, recently removed from Carter County, Oklahoma. That on the 22nd day of April, 1946, he went to the home of the defendant Eb Hall to help bale hay, that Connie Adams and his wife Edna Adams were there. That about the time affiant arrived he looked off in a southeastern direction and saw Jimmie Glenn Hall, a son of Eb Hall with a shot gun in his hands which he had fired twice; that immediately after the shooting Eb Hall, and the Adamses came out of the house to see what the shooting was about. There was Jimmie, Eb Hall and the Adamses and myself there; I looked off across the wheat field and saw a woman in Eb Hall's wheat patch up towards the Emberlin's house, who may have been Mrs. Emberlin I could not identify her at that distance. When the shooting was over some dogs and this woman went on towards the Emberlin house. There was no loud talking, and no conversation between Eb Hall and the woman that I saw off towards the northeast. Jimmie Glenn Hall brought the shotgun back and put it away. Directly we all decided that it was too wet to bale hay, and me and the Adamses left there. I did not know about the trial of this case in October, 1946, but after the time of the shooting, and the trial I moved

to Tillman County, Oklahoma, and can be a witness on another trial of this case I have no interest in this matter, except that justice be done.

"J. A. Wells"

"Conn Adams and Edna Adams being sworn each for themselves, depose and say; that they are husband and wife, that they reside near Tussey, Oklahoma, That on the 22nd day of April, 1946, affiants were present at the home of the defendant Eb Hall and in his house when they heard two shots fired from a gun, at that time the defendant Eb Hall was in the house, in the kitchen, cleaning up that part of the house; that when they heard the shooting they (affiants) went out of the house, and at about the same time the defendant Eb Hall came through the room where affiants were, and that all of them went out of the house about the same time. That they all looked out southeast of the house, and saw Eb Hall's boy, Jimmie Glenn Hall off a hundred yards or so southeast of the house with a shotgun in his hands, that there was smoke from the gun around and above him. That this morning the defendant Eb Hall did not have any gun in his hands, it was Jimmie Glenn Hall that did all the shooting. Affiants say that they saw the cattle over southeast of the Eb Hall house, and saw the dogs that had been chasing the cattle, and that Jimmie Glenn Hall shot at the dogs, and did not shoot at the woman over on the east side of the Eb Hall farm. That soon after the shooting they heard a car coming east on the road and that by the time that car got up to the Emberlin house the said Jimmie Glenn Hall had come back to the house. That the defendant Eb Hall did no shooting that morning. Affiants further say that they had come there that morning to help bale hay, and that on account of it being cloudy and looking so much like rain the hay baling was postponed. That they saw a woman on the east side of the Hall farm, but that on account of the distance and the weather condition they were unable to identify who the woman was: That there was no hollowing or conversation between Eb Hall and the prosecuting witness. That a short time before the

trial of the defendant Eb Hall affiants left their home near Tussey, and went to Logan County, Oklahoma, where they are at the present time, but that they expect to be back to their home near Tussey before very long. That they did not move on account of trying to escape being witnesses in this case, and that they are willing to appear in court and give evidence of their knowledge of the case. That they did not tell the defendant Eb Hall that they were going away, and as far as they know he did not know that they had gone from their home near Tussey.

"That they have no interest in this case and make this statement only that justice may be done.

"Connie Adams
"Edna Adams"

At the hearing on the motion for new trial, the county attorney used three witnesses who testified they saw J. A. Wells there in the vicinity of defendant's home on Sunday before the trial commenced on Monday. One of these witnesses testified that he had known Wells for 25 years, and that shortly before the trial Wells had moved to Tipton in western Oklahoma. This same witness also testified that he knew Connie Adams who lived close to Goose Neck; that Adams baled his hay and that he left his place to go bale the defendant, Eb Hall's, hay. The court thereupon passed the case for one week and issued out of county subpoenas to have the witnesses of the defendant, J. A. Wells, and Mr. and Mrs. Conn Adams, brought before the court.

The subpoenas for Mr. and Mrs. Adams were sent to Kay county and on December 12th a return was made by the undersheriff of Kay county stating that Burbank, the place where the Adams lived, was in Osage county and not in Kay county. At the time of the hearing, the subpoena issued in Tillman county for the witness Wells had not been returned and Wells did not appear.

By statute it is provided:

"When an indictment or information is called for trial, or at any time previous thereto, the court may, upon sufficient cause shown by either party, as in civil cases, direct the trial to be postponed to another day in the same or next term." 22 O. S. 1941 § 584.

In applying this statute it is now well settled that an application for continuance is addressed to the sound discretion of the trial court and the ruling of the court will not be disturbed on appeal in the absence of an abuse of discretion. Nix v. State, 20 Okla. Cr. 373, 202 P. 1042, 26 A. L. R. 1053; Inman v. State, 61 Okla. Cr. 73, 65 P. 2d 1228; Simmons v. State, 68 Okla. Cr. 337, 98 P. 2d 623.

It has been said that a continuance should be granted only that justice may be done. Goben v. State, 20 Okla. Cr. 220, 201 P. 812; Ross v. State, 34 Okla. Cr. 363, 246 P. 645.

It has further been held that in reviewing the refusal of a continuance, all the facts and circumstances disclosed by the record will be considered by this court in determining whether or not the exercise of discretion by the trial court was abused in denying the application. Inman v. State, supra; Tucker v. State, 9 Okla. Cr. 587, 132 P. 825.

This case has caused the court much concern. No doubt, the trial court was deeply concerned as he stated at the time he pronounced sentence upon the defendant:

"Gentlemen, I have given considerable thought and attention to this matter. I would really like to give Mr. Hall a new trial as far as I am personally concerned."

In an ordinary case the precautions taken by the trial court as shown by the various continuances from date to

date in passing upon the motion for new trial would have prompted this court to say there was no abuse of discretion in denying the motion for continuance and in overruling the motion for new trial. However, the case itself presents a factual situation where the testimony of the absent witnesses, if obtainable as it appears likely they would be, might change the result of the case. It is unfortunate that neighboring families have become so involved as the facts disclose the Emberlin and Hall families to be. The witnesses, Wells and Mr. and Mrs. Conn Adams, corroborate the evidence of the defendant, that it was defendant's boy who fired the shots and that he was shooting at the dogs with the shotgun and not at Mrs. Emberlin with the rifle. When the jury first returned to the court after they had retired to deliberate on their verdict, counsel for the defendant who had been appointed by the court was not present. The defendant was present and a colloquy occurred between the court, county attorney, and the jury, concerning the question as to whether the jury could find the defendant guilty and leave the punishment to the court. The foreman of the jury advised the court that they had determined the guilt of the man, but not the penalty. During the conversation by the court and the jury, the county attorney interrupted to say:

"I might suggest, if the court please, there is several degrees, they might find the degree and then leave it up to the court."

The court then concluded the conversation by saying: .

"All right, let's take about fifteen minutes gentlemen, if you can't agree within that time as to punishment, then you agree on your verdict and return it with-

out fixing the punishment and we will get through tonight."

After considering this record, it is hard for us to conclude that the defendant, even assuming that he fired the shots as claimed by the state, intended to kill or even strike the prosecuting witness. If he had intended to have shot her, there is nothing in the record which apparently showed anything to have prevented it. Mrs. Emberlin did not take him too seriously because she testified that after the first shot was fired, she hissed the dogs on the cattle again. An ordinary person would not have stayed and hissed the dogs on the second time if they had thought that someone was firing at them only 150 yards away with a high powered rifle. They might have stood the ground for the first shot, but a sensible individual would have been several yards away before the second shot was fired.

After considering all the facts and circumstances as disclosed by the record, it is our conclusion that the case should be retried with the defendant given another opportunity to produce the witnesses Wells and Adams and that another jury should then be allowed to pass upon his guilt or innocence after hearing this evidence.

The judgment and sentence of the district court of Carter county is therefore reversed and remanded, with instructions to grant the defendant a new trial.

BAREFOOT, P. J., and BRETT, J., concur.