James L. CROSSWHITE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12481.

Criminal Court of Appeals of Oklahoma.

Oct. 30, 1957.

James M. May, McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, James L. Crosswhite, defendant below, was charged by information in the District Court of McCurtain County, Oklahoma, with the crime of assault with a dangerous weapon by means of a .38 cal. Smith & Wesson pistol, with intent to kill, 21 O.S.Supp.1955, § 652, by shooting Russell Pennington in the shoulder resulting in permanent paralysis in his lower extremities. He was tried by a jury, convicted, and his punishment fixed at fifteen years confinement in the state penitentiary. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

Briefly, the facts are that on the 24th day of December, 1955, the defendant, James L. Crosswhite, the prosecuting witness, Russell Pennington, and Everett Pannell, all brothers-in-law, were engaged in some pre-Christmas drinking in a tavern to which they had gone in the defendant's car. Crosswhite appears to have become intoxicated. He had been teasing Pennington for some time and on this occasion particularly about his hair cut. It appears Crosswhite became profane and abusive and Pennington invited him out of the tavern to the rear where they engaged in a fight. Pennington, weight one hundred and seventy five pounds, knocked Crosswhite, weight two hundred twenty five pounds, down and Crosswhite got a brick with which to strike Pennington, which Pennington took away from him. At this time, they were separated by Pannell. Crosswhite said to Pennington, "You'll have to do it over", to which Pennington replied, "All right." Pennington and Pannell left and went to the main street of the town where they borrowed a car from Ed McGowen, another brother-in-law, in which they started home. They also picked up McGowen's two and one-half year old daughter to take with them. On the way home, they were met by Crosswhite going in the opposite direc-

tion in his automobile. Crosswhite flagged them down, stating he wanted to talk to Pannell. Both cars stopped with their back bumpers in line. The record at the trial discloses Pannell got out of the car and went around to the front. The defendant had stepped out of his automobile to the rear of the car Pannell was driving and started shooting through the car at Pennington who was seated on the right side with the little girl next to him. Crosswhite fired six times, he admitted on direct examination, two of which bullets struck Pennington in the shoulder, one of which glanced down into his spine, causing paralysis of his lower extremities. The record shows neither Pennington nor Pannell were armed. After the shooting, Pannell drove away to avoid further difficulty. The record shows the defendant, Crosswhite, followed them home and made further threats that he would finish off both Pennington and Pannell. The defendant was finally subdued by his wife and disarmed. He got into his car and drove out of the state into Arkansas where he was apprehended.

The defendant's defense was that his life had been threatened and he went home, got the pistol, and laid it on the seat of the car when he started back to town. He testified when he approached Pennington and Pannell, they flagged him down. When Pannell got out of the automobile and came across the road, he had a knife in his hand and Pennington was getting out of the car. He feared they were going to whip him and said he was not about to take a beating. He admitted, however, Pennington never did get out of the car and the physical facts support this admission. It appears Pennington was shot from the back and fell on the floor of the car in the front seat. Crosswhite admitted that Pannell did not advance toward him after he saw the gun but ran back to the car after the shooting and drove away. Crosswhite admitted that Pannell did not have anything in his hand that he could see. (It is interesting to note that notwithstanding these admitted facts, the defendant shot Pennington and not Pannell, indicating a pre-conceived intent.) Crosswhite admitted the shots were fired from about six or eight feet back of the car. He admitted that he reloaded the pistol at the scene of the shooting. On these facts, the jury found the issues against the defendant and the evidence is sufficient to support its findings which are binding on this Court. Dodson v. State, Okl.Cr., 284 P.2d 437.

It further appears that Pannell was home on leave from the Navy when the foregoing events occurred. Probably in anticipation of his absence at the trial, the County Attorney took his sworn affidavit detailing the facts leading up to, at the time of, and following the shooting. At the time of trial, Pannell was in Korea and when the case was called, the defendant filed and urged his motion for continuance on the ground of the absence of Pannell. Attached to the motion was the defendant's affidavit setting up what the defendant said Pannell would testify to. The motion for continuance was overruled and this action is assigned as ground for reversal.

The pertinent part of the defendant's affidavit reads as follows:

"* * * that the three of them were drinking considerable intoxicants; that he was present at the beer tavern in the town of Broken Bow, at which place there arose a difficulty between the defendant and the said Russell Pennington; that said witness would testify that the said Russell Pennington was the aggressor and provoked the said difficulty, at which time the said Russell Pennington attacked the defendant and threatened to kill defendant with a certain rock; that after said difficulty at the beer tavern the defendant left same and that he and the said Russell Pennington followed the defendant with the avowed intention of again attacking him; said witness would testify that it was he and the said Russell Pennington later stopped the defendant and there threatened him, at which time the shots were fired which resulted in the injury of the

said Russell Pennington; that the said Everett Dale Pannell was threatening the defendant with a shot gun, intending to shoot him, and that was the reason the defendant, with his said wife, left the place. That these material facts cannot be proven by any other witness."

To this affidavit, the state offered Pannell's affidavit counter thereto. The statement of facts in this counter affidavit are almost identical to the testimony of Pennington which, as to the shooting, constituted the state's case. We might state, however, that the affidavit of Pannell was much more damaging in some particulars to the defendant than was the testimony of Pennington. In addition to the delineation of facts as hereinbefore set forth, the affidavit of Pannell revealed that when Crosswhite got out of his automobile, he came to the back door of the car and said: "I am going to kill you Rusty (Pennington)." Then he opened fire. When the shooting began, Pannell related, both he and Pennington were seated in their car. Pannell said when Crosswhite fired his last shot, he ran to him and grabbed him by the arm, throwing him to the ground. Crosswhite got to his feet, snapped his pistol three times at Pannell and then hit Pannell in the forehead with the barrel. Pannell's affidavit related he pushed Crosswhite down in the road and Crosswhite got to his feet and said: "I am going to kill you," and started reloading the pistol. Pannell's car was still running, he said, and he ran to it and drove on home with Pennington on the floor. At the house, the affidavit revealed, Crosswhite threatened to finish off Pennington and his wife, and threatened Pannell's mother saying: "Don't stand in my way, I will kill you too." He related that during the shooting the little girl was between him and Pennington.

The defendant contends in this regard that the trial court erred in overruling his motion for continuance and in admitting the affidavit of Pannell in evidence at the hearing on the motion for continuance in refutation of the defendant's affidavit. The defendant predicates this objection on the provisions of 12 O.S.1951 § 668 reading as follows:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. If thereupon, the adverse party will consent that on the trial the facts, alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence."

Under this statute, the motion for continuance on account of absent witness can be made only on affidavit. Hence, it follows that a traverse thereof would be by counter-affidavit. The reason for this statutory limitation is to keep such proceedings from getting out of hand and expanding into a hearing on the merits. The defendant urges that under the foregoing statute, the County Attorney had to admit the allegations of the defendant's affidavit as true, or if he denied the same, then it was the duty of the court to grant a continuance, and the refusal of the trial court so to do constituted a denial of a fair trial and resulted in prejudice to the defendant. In support of this construction, he cites Madison v. State, 6 Okl.Cr. 356, 118 P. 617, and Hargis v. State, 33 Okl.Cr. 283, 243 P. 986. He probably overlooked the fact that the Hargis case not only does not support his contention, but further reemphasizes the fact that the Madison case has long been overruled by this Court, citing Owen v.

State, 13 Okl.Cr. 195, 163 P. 548; Ennis v. State, 13 Okl.Cr. 675, 167 P. 229, L.R.A. 1918A, 312. In Andrews v. State, 84 Okl. Cr. 104, 179 P.2d 491, a long list of cases is cited contrary to the defendant's contention herein.

Furthermore, it is apparent that the foregoing Madison case completely overlooked the provisions of 22 O.S.1951 § 584 reading as follows:

"When an indictment or information is called for trial, or at any time previous thereto, the court may, upon sufficient cause shown by either party, *as in civil cases,* direct the trial to be postponed to another day in the same or next term." (Emphasis ours.)

The phrase, "as in civil cases," makes the provisions of 12 O.S.1951 § 668, supra, clearly applicable in criminal cases. Under these provisions, it is clear that motions for continuance and a traverse thereof shall be presented upon affidavit, counter-affidavit, and supplemental affidavit. Randolph v. Hudson, 12 Okl. 516, 74 P. 946; Knox v. State, 116 Tex.Cr.R. 578, 32 S.W.2d 841, 842, wherein the Court said:

"The court was justified in overruling the application. It is made evident by the affidavit of the witness that she would not give the testimony set out in the application for continuance."

In this connection it is contended the counter-affidavit offered by the state was ten months old and that there is no assurance that Pannell would now testify to those facts. The burden was on the defendant to establish that he would not so testify, and there is not a scintilla of evidence to support this contention.

It appears to us, as no doubt it did to the trial court, that the defendant was caught unaware of the Pannell affidavit as a traverse to his own affidavit. The record at the trial does not support the allegations of the defendant's affidavit and clearly supports the affidavit of Pannell as to what occurred preceding the shooting and afterward. The affidavit of Pannell was properly offered in evidence as a traverse to

Crosswhite's affidavit for continuance. In 22 C.J.S. Criminal Law § 517, p. 828, it is said:

"* * * counter-affidavits are generally held permissible to show the improbability of the absent witness' testifying as applicant has represented that he would, * * *."

At page 768, § 490(b), it is further said:

"It is not error to refuse to grant a continuance to secure an absent witness where the material facts to which it is claimed he will testify are contradictory to such witness' previous sworn statements or affidavits; * * *."

O'Toole v. State, 40 Tex.Cr.R. 578, 51 S.W. 244; State v. White, 152 Mo. 159, 53 S.W. 895; Gaines v. States, Tex.Cr.App., 77 S.W. 10; Crumpton v. State, 149 Tex.Cr.R. 38, 191 S.W.2d 477; Johnson v. State, 128 Tex. Cr.R. 12, 78 S.W.2d 965; Rambo v. State, 140 Tex.Cr.R. 269, 144 S.W.2d 554.

It has been many times held by this Court that such matters are addressed to the trial court's sound discretion. Hall v. State, 87 Okl.Cr. 191, 196 P.2d 703.

Moreover, the affidavit is fatally defective for the reason it does not allege, as required by the provisions of 12 O.S.1951 § 668, that the affiant believes the matters he alleges Pannell would testify to are true. Without this allegation, the affidavit for continuance is defective on its face. It has been held that in such case, it is not error to refuse a continuance. Lester v. State, 47 Okl.Cr. 156, 287 P. 758; Braught v. State, 17 Okl. Cr. 1, 179 P. 769, 772, wherein it is said:

"A most careful reading and re-reading of the affidavit filed for a continuance in the instant case discloses that said affidavit does not contain the necessary averment that the affiant, the defendant, believes that the facts that the absent witness, Kessenger, as averred in said affidavit, would testify to, are true, nor is there anything in said affidavit from which it can be construed that the facts which it is averred that said witness would testify to are believed by the affiant, the defendant;

and this failure to comply with the requirements of said section 5045 (12 O.S. 1951 § 668), that the defendant believed that the evidence which it is averred in the said affidavit the absent witness, Kessenger, would furnish, is true, fully sustains the trial court in overruling the motion for continuance; * * *."

The said affidavit being invalid, it required no counter-affidavit.

█ The next contention of the defendant is that the evidence is insufficient to support the jury's verdict. The evidence presented is of a conflicting nature and as such presented a question for the sole determination of the jury. McCormick v. State, Okl.Cr., 279 P.2d 359; Gardner v. State, Okl.Cr., 278 P.2d 249; Dodson v. State, supra.

█ Next, the defendant contends the trial court misdirected the jury in instruction No. 10, reading as follows:

"You are instructed that 'great bodily harm,' as used in these instructions, means such a wound or bodily hurt as would probably produce death, or permanent disability, and that a person would not have the right to commit an assault with a dangerous weapon because the other person was making a simple assault upon the defendant, James Crosswhite, without the use of any weapon as would likely produce great bodily harm."

In support of this contention, he asserts:

"Great bodily harm was a vital issue in this case in that the defendant, in order to sustain his plea of self-defense, had to show to the court and jury that his life was in danger or that *it* was in danger of receiving great bodily harm to justify his act. The use of the term 'or permanent injury' severely restricted the meaning of 'great bodily harm' which put an additional burden upon this defendant to show the impending injury to him by the prosecuting witness would be of such a nature in addition to being an aggravated assault upon him for fear for his life, but had to

go further and prove that said impending danger to him would have inflicted upon him an injury that was permanent."

The error in giving instruction No. 10 was not by way of including the expression "or permanent injury," therein, but because the evidence did not require the giving of the same. Even according to the defendant's own testimony, it appears that the victim never got out of the automobile or advanced toward the defendant. It further appears that Pannell, whom the defendant says came toward him with what he thought was a knife, "turned and run around the car when he saw the pistol." Even though Pannell advanced towards him, he did not shoot him, but instead shot Pennington who was still seated in the automobile. The defendant, at no time contended that Pennington was armed. It is therefore clear that under this record the defendant could not have been under apprehension either of danger of death or a wound resulting in permanent injury or great bodily harm and the giving of instruction No. 10 was therefore improper. Hence, under these conditions, the giving of any instruction on the theory of self defense was not reversible error, but was error in favor of the defendant. We are therefore of the opinion the defendant was not prejudiced by the court's instruction.

█ Finally, the defendant contends the punishment imposed is excessive and that it was imposed as the result of passion and prejudice on the part of the jury. We have examined the cases from this jurisdiction and find that the most severe penalty imposed in cases of this kind was in the case of Ex parte Shockley, 78 Okl.Cr. 101, 142 P.2d 118, where the defendant received twelve years as a second and subsequent offender, having formerly been convicted of burglary in the second degree. In Harvell v. State, 97 Okl.Cr. 97, 252 P.2d 702, when the maximum penalty was ten years, prior to the amendment of 1955, the defendant was given a nine year sentence for shooting his wife and inflicting a wound which required the removal of a kidney. We can

readily see how under the facts in the case at bar the jury's passion against the defendant might have been aroused and greater punishment imposed than otherwise. Furthermore, the record herein shows it was Pennington who sought the original mutual conflict with Crosswhite instead of leaving at the outset. If he had left the tavern at the outset and gone home instead of fighting with the defendant, the shooting affray would probably never have occurred. Moreover, this defendant has no prior record of law violation. He should be a fit subject for reformation which is one of the primary objects of incarceration. In light of the defendant's past good record and the penalties imposed in previous cases, we are of the opinion the penalty herein imposed should be and is hereby modified by reducing it under the provisions of 22 O.S.1951 § 1066 from fifteen years to twelve years confinement in the state penitentiary, and as modified, the judgment and sentence is affirmed.

POWELL and NIX, JJ., concur.