**Ruel HUX, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–269.**

Court of Criminal Appeals of Oklahoma.

Aug. 27, 1976.

Rehearing Denied Sept. 14, 1976.

Reid K. Mayfield, Atoka, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Ruel Hux, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Atoka County, Case No. CRF–75–52, for the offense of Escape From a State Penitentiary, in violation of 21 O.S.1971, § 443. The jury fixed his punishment at five (5) years' imprisonment in the State penitentiary, and from said judgment and sentence a timely appeal has been presented to this Court.

The first witness for the State was Lowell Reasor. Mr. Reasor testified he was employed as the classification and records supervisor at the McLeod Honor Farm, located within Atoka County. He further identified the defendant as Ruel Hux, Jr.,

and stated that the defendant was incarcerated at McLeod Honor Farm beginning on June 23, 1975. The witness stated that the defendant was incarcerated under judgment and sentence in Case No. CRF–75–95, Oklahoma County, for operating a motor vehicle while under the influence of intoxicating liquor, after former conviction of operating a motor vehicle while under the influence of intoxicating liquor. This judgment and sentence was admitted into evidence as State's Exhibit No. 1.

The State's next witness was James Armstrong who stated that he was employed as a security guard at the McLeod Honor Farm on the day of June 28, 1975. Mr. Armstrong testified that on that day he took a line count and discovered that there were two inmates missing. The witness then identified the defendant as one of the inmates missing on June 28, 1975. Upon discovering that the defendant was missing, Mr. Armstrong stated that he informed his superior officer of the defendant's absence and conducted a search of the immediate area of the compound. Neither of the missing inmates was found on that search.

The next witness for the State was Leland Bartlett. Mr. Bartlett testified that on June 28, 1975, he was employed as a correctional officer at the McLeod Honor Farm. He further testified that on that day the line count revealed that two inmates were missing, and he identified the defendant as one of the missing inmates. The witness stated that he supervised a search of the immediate area with negative results. He then testified that a search outside the compound area resulted in the apprehension of the defendant by another officer. He further testified that according to his knowledge, the defendant did not have any authority from anyone to leave the McLeod Honor Farm on June 28, 1975.

The State then called W. H. Reynolds, who testified he was employed at the McLeod Honor Farm and worked on the escape team. He further testified that he

worked on the escape team in a search for the defendant on June 28, 1975. The witness identified the defendant and stated that he apprehended him four miles north and one and a half miles west of the compound. This was outside the premises of the McLeod Honor Farm. Mr. Reynolds testified that the defendant was not armed and offered no resistance. He stated that the defendant said he was going home.

The State then rested.

The defendant demurred to the evidence, and said motion was overuled.

The first witness for the defense was Mrs. Ruel Hux, Sr. She stated that she was the mother of the defendant. She further testified that the defendant had a history of severe headaches, black outs and emotional outbursts. According to the witness, the "spells" would sometimes last three to four days.

The defense next called the defendant to testify in his own behalf. The defendant testified that he had been incarcerated on several previous convictions. He further testified that he had had migraine headaches throughout his life, that he would black out, and that these episodes would sometimes last for three or four days. The defendant stated that he had been told that a man was going to kill him and that he was frightened for his life. He stated that he only wanted to "get away from it all." (Tr. 46) The defendant stated he was suffering from a headache when he left the compound and that he had seen a doctor at Stringtown the day before about this problem. According to the defendant, the doctor did not dispense any medication to him. He also stated that he had been apprehended three or four miles from the McLeod Honor Farm.

At this time the defense rested, and the State offered no rebuttal witnesses.

In his first assignment of error defendant contends that the trial court erred in denying his motion for a continuance of trial when the subpoenas for the defendant's witnesses and his prison medical records in Pittsburg County, Oklahoma, were not served. The record shows that the defendant's motion for continuance of trial was presented and heard as follows:

"BY MR. MAYFIELD: Your Honor, the Defendant respectfully moves the Court to continue this cause for the reason the subpoenaes of certain witnesses at McAlester, Oklahoma have not been delivered, or served, according to the Sheriff's Office of Pittsburg County, Oklahoma. I hand-carried the subpoenaes to the Sheriff's Office on December 24 to Pittsburg County and was promised by Sheriff Orr they would be delivered, but I checked his office this morning and he advised me the subpoenaes I delivered there were not delivered, or served.

"BY MR. MILLSPAUGH: Your Honor, the State is ready to try this case; we have witnesses and we are ready to go.

"BY THE COURT: Let the record show that on the 13th day of November, 1975, this Court entered an Order setting said cause for trial on Monday, December 15, 1975 at 9:00 o'clock A.M.; that thereafter, on November 17, 1975, that an arraignment docket was held and said cause on said date was set for trial on the 18th day of December, 1975; that thereafter said cause was continued until December 29, 1975, and that due diligence has not been used or exercised by the Defendant in subpoenaing said witnesses upon which he premises his Motion for Continuance. Accordingly, Motion for Continuance Overruled; exceptions allowed." (Tr. 1–2)

In ruling upon defendant's motion for continuance, we observe initially that the defendant did not meet the statutory requirements as set forth in 12 O.S.1971, § 668, as follows:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, showing the materiality of the evidence expected to be ob-

tained, and that due diligence has been used to obtain it, and where the evidence may be; and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. If thereupon, the adverse party will consent that on the trial the facts, alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence."

This Court dealt with 12 O.S.1971, § 668, in *Crosswhite v. State,* Okl.Cr., 317 P.2d 781 (1957), wherein we stated:

"Under this statute, the motion for continuance on account of absent witness can be made only on affidavit. . . . "

Although the aforementioned statute applies to civil cases, this Court has held it applicable to criminal cases as well. See, *Crosswhite v. State,* supra, and *Snow v. State,* Okl.Cr., 453 P.2d 274 (1969).

■ Under the law of this State defendant was required to file an affidavit with the trial court in order for the motion for continuance to be proper. The record reveals that no affidavit was filed. In addition, no oral evidence was introduced by the defendant as to the facts to be proved from the expected testimony, the probability of obtaining a witness within a reasonable time, nor the materiality of the testimony. In view of the fact that the defendant failed to meet the statutory requirements for making the motion for a continuance of trial, we find that the trial court acted properly in denying the motion.

Defendant concedes that the statutory affidavit in support of his motion for continuance of trial was not submitted as re-

quired by 12 O.S.1971, § 668, but he argues that an application for a continuance of trial should not be denied for failure to comply with technical formalities, for to do so would deprive the accused of a fair trial. Defendant cites *Goben v. State,* 20 Okl.Cr. 220, 201 P. 812 (1921), to support his contention. However, said case is distinguishable from the instant case for in *Goben v. State,* supra, the defendant's motion for a continuance was supported by an affidavit. See, *Goben v. State,* supra, 813. Further, we can find no evidence in the record which would indicate that the defendant did not receive a fair trial.

Defendant also cites *Banker v. State,* 59 Okl.Cr. 213, 56 P.2d 1205 (1936), in which this Court said:

"Ordinarily, the granting or refusing of a continuance is in the discretion of the court, and its decision will not be disturbed on appeal, unless it appears that there has been an abuse of such discretion. However, a continuance ought always to be granted when, from the showing, justice requires it to be done, and to enable a defendant to procure all competent evidence necessary for his defense, if he has used due diligence to obtain the same. . . . " (at 1207)

Defendant contends that he exercised due diligence in securing the presence of his witnesses. However, the record does not support that contention. The record reveals that on November 17, 1975, the trial court set the trial date for December 18, 1975. On December 17, 1975, the defendant asked for a continuance to subpoena additional witnesses, and the trial court granted defendant's motion. The defendant had over a month from November 17, 1975, to issue subpoenas, but failed to do so. This Court stated in the second paragraph of the Syllabus to *Colvard v. State,* Okl.Cr., 453 P.2d 715 (1969), that:

"The rule is well settled that it is the duty of defendant to use all reasonable diligence in order to secure the attendance of witnesses in his behalf, and it must be made to appear from the appli-

cation of continuance that he has used due diligence in procuring the attendance of his witnesses, and the application must set out facts fully which constitute due diligence."

█ We find that defendant has not demonstrated that he used due diligence in procuring the attendance of witnesses, and he has not set out facts which constitute due diligence. The fact that defense counsel had subpoenas issued five days before the trial does not, under these circumstances, demonstrate due diligence. This Court dealt with a similar situation in *Harrison v. State,* 29 Okl.Cr. 394, 234 P. 221 (1925), wherein we stated in the second paragraph of the Syllabus:

"When a case is assigned for trial more than a month and a half before the day set for the trial, it is not due diligence for a defendant to wait until five or six days before the trial before having subpoena issued for his witnesses, where he knows of the materiality of their testimony."

There is every indication that the defendant was aware of the potential materiality of the testimony of the witnesses whose absence is under discussion. The witnesses were incarcerated at Oklahoma State Penitentiary. Defendant has made no argument that the identity of these witnesses and the materiality of their testimony was not discovered until five days before the trial. Therefore, it is evident that defendant not only failed to meet the statutory requirements for making a motion for continuance, but also failed to exercise due diligence. Thus, there was no abuse of discretion by the trial court in denying the motion for continuance.

█ It is a well settled rule that motions for continuances are left to the sound discretion of the trial judge and that unless the trial judge's discretion is clearly abused, it will not be disturbed. See, *Mangum v. State,* Okl.Cr., 541 P.2d 1348 (1975). We find that there was no abuse of discretion in this case and that the first assignment is without merit.

In his second assignment of error the defendant contends that the closing argument of the Assistant District Attorney was improper and prejudicial to the defendant. The remarks to which the defendant objects were made during the closing argument of the prosecution when he stated:

". . . just look around you right now—earlier today we had approximately a hundred jurors sitting out there—and twelve of you are having to sit here all day—the attorneys have to be here—the District Judge has to be here—the Court Clerk, the Court Reporter—all ad infinitum—so that dumb, stupid move by the defendant has affected hundreds of people in this county—

"BY MR. MAYFIELD: We object to that as it does not in any way answer our closing argument and its incompetent, irrelevant and immaterial, and we object to it.

"BY THE COURT: Sustained; exceptions allowed." (Tr. 67–68)

To support his contention, defendant cites the case of *Fike v. State,* Okl.Cr., 388 P.2d 347 (1963), in which this Court stated:

"A prosecuting attorney in a criminal case represents the public, and is a quasi judicial officer, charged with the duty of seeing that the defendant receives a fair trial. . . ." (at 350)

█ While we do not dispute the fact that a prosecuting attorney is responsible for insuring that the defendant receive a fair trial, we do fail to find that the remarks made by the prosecutor influenced the jury's verdict against the defendant. See, *Severs v. State,* Okl.Cr., 477 P.2d 695 (1970), in which this Court stated:

". . . Although there was misconduct on the part of both trial counsels, this Court is committed to the rule that misconduct by the prosecuting attorney is not reversible error where the proof of the defendant's guilt is overwhelming and the record does not indicate that the

misconduct was prejudicial so as to substantially affect the jury's finding. . . ." (Citations omitted) (at 697)

Accordingly, we find that the evidence was overwhelming as to defendant's guilt. The State proved the elements of the crime beyond a reasonable doubt. There is no dispute about the fact that defendant was imprisoned at McLeod Honor Farm, and the evidence clearly establishes the fact of escape. In view of this evidence, we do not agree that the remarks made by the prosecutor were prejudicial to the defendant.

■ While the remarks made by the prosecutor in the instant case were improper in that they were outside the scope of discussion, they do not constitute reversible error. Finally, we find that defendant waived the right to assert error on appeal because the defense counsel failed to request that the jury be admonished to disregard the statements when he made his objection. See, *Sam v. State*, Okl.Cr., 510 P.2d 978, 982 (1973), and *Lancaster v. State*, Okl.Cr., 541 P.2d 1343, 1346 (1975). This assignment of error is, therefore, without merit.

For the above and foregoing reasons the judgment and sentence appealed from is, accordingly, *AFFIRMED*.

BLISS, J., concurs.

BRETT, P. J., specially concurs.

BRETT, Presiding Judge (specially concurring).

While I agree that the evidence is sufficient to sustain this conviction, I believe the sentence is excessive and should be modified to two (2) years. Throughout other portions of the State similar convictions of this nature are being assessed as two year sentence. Likewise, and notwithstanding the failure to provide the affidavit for continuance, I believe the court should have made some inquiry into the absence of the penitentiary witnesses and records. Five days prior to the trial, the defense counsel personally delivered the subpoenas to the Pittsburg County Sheriff's Office for service, but they were not served on the prospective witnesses. This may be a process of preventing the defendant's capability of offering a legitimate defense. Consequently, I believe the court should find out why the subpoenas were not served. To my way of thinking, this inquiry would better serve the ends of justice.

ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE FORTHWITH

■ A Petition for Rehearing has been filed in the above styled and numbered cause asserting that counsel for Appellant did, in fact, exercise due diligence under all the facts and circumstances attending the particular case before us. Assuming that due diligence had been shown, which in this case has not been demonstrated, Appellant's claim of abuse of discretion must still fall for the reason that he failed to set forth the materiality of the testimony of said witnesses or what they would testify to if present, in such a manner that they could have been stipulated to by the State, and such stipulation could then have been presented for the jury's consideration without the necessity of granting a continuance and delaying the trial.

The Petition for Rehearing must be denied for the reason that due diligence was not demonstrated, nor was the affidavit for continuance filed as required by law, setting forth the materiality of the testimony of the witnesses in such a manner as could be stipulated to by the State.

IT IS THEREFORE THE ORDER OF THIS COURT that the Petition for Rehearing be, DENIED, and the Clerk of this Court is directed to issue the Mandate FORTHWITH.

WITNESS OUR HANDS, and the Seal of this Court, this 14th day of September, 1976.

HEZ J. BUSSEY, J.

C. F. BLISS, Jr., J.