John Lee NICHOLS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–495.

Court of Criminal Appeals of Oklahoma.

Oct. 4, 1976.

William Douglas Giessmann, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The Appellant, John Lee Nichols, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Cleveland County, Case No. CRF–75–486, of the crime of Burglary in the Second Degree. Punishment was assessed at a term of four (4) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict, the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Officer David St. John of the Norman Police Department testified that on September 10, 1975, he was dispatched to a church in Cleveland County to investigate a break-in. On arriving he met the pastor and they proceeded to examine the building where St. John observed a window screen which had been cut open and the back door was unlocked. Upon entry he noted that objects were strewn around the main sanctuary. In the storeroom several boxes and suitcases had been rummaged through and a plastic diabetic test kit was on a table. Numerous items were missing from the church.

Pastor James Melton then testified that he was pastor of the Little Axe Full Gospel Mission and on the Sunday prior to September 10, he, as usual, picked up Tim and Jane Martel on his way to the Sunday service. The defendant and his wife were with the Martels and also attended the church services held in the sanctuary. After the service Melton went into the storeroom to get some glasses of water for the congregation. The defendant did not enter the storeroom. After the service Melton secured the church and took the Martels and the defendant and his wife home. Melton returned to the church on the 10th and discovered the break-in. He found numerous items missing and noted that certain boxes had been rummaged through and that a diabetic test kit which had been packed away in a box was on the table in the storeroom. He further stated that no one attending the Sunday service had access to the boxes or the diabetic kit and that he had given no one permission to enter his church and take any property. He further related that he subsequently identified certain property recovered by the police as the property taken from the church.

Detective Gerald Moody then testified that as a part of the investigation he received information concerning the stolen property and proceeded to a vacant apartment in Oklahoma City which the owner allowed him to search. In the apartment he found the stolen property. Moody further stated that he knew the defendant and that while in the apartment he noticed the defendant sitting in a parked car approximately 175 feet away. The defendant drove off before he could be apprehended. Moody further testified that he had occasion to dust the church for fingerprints and lifted three latent prints off the diabetic test kit. He gave the fingerprints to police I.D. specialist, Larry Peters.

Officer Peters after relating his qualifications as a fingerprint identification ex-

pert then testified that he compared the latent prints with the defendant's fingerprint card on file with the Norman Police Department. The latent print identified as Exhibit 2 was found to be identical with the right middle fingerprint of the defendant. He further stated that it was his opinion that the print found on the kit was made by the defendant. The State then rested.

The defendant then took the stand in his own behalf testifying that on the occasion he and his wife and the Martels attended a morning church service at the Little Axe Church. He further stated that while Pastor Meton was talking to other members of the congregation he and his wife went into the storeroom to get a drink of water and that while he was looking for cups he may have touched a few things in the room. On cross-examination the defendant stated that he may have been in Oklahoma City on or about the 11th of September, but could not remember if he was near the vicinity of the apartment. The defendant's wife then testified that on the Sunday in question she and her husband did attend the church service and went into the storeroom to get a drink of water. She further stated her husband may have gone back a second time that morning.

The defense and the State then stipulated that if subpoenas had been served upon Mr. and Mrs. Martel they would have testified that they were at the church on the Sunday morning in question and that they observed the defendant and his wife enter the room to get a drink of water. The defense then rested.

The defendant's sole assignment of error contends that the trial court committed reversible error in denying the defendant's motion for a continuance based upon the unavailability of the Martels to testify as defense witnesses. The record indicates that Mr. and Mrs. Martel were subpoenaed on the 18th day of February, 1976, to appear at trial on the 24th of February. The subpoenas were returned without service.

■ This Court had held on numerous occasions that a motion for continuance must be accompanied by an affidavit for continuance in compliance with 22 O.S. 1971, § 584 and 12 O.S.1971, § 668. *Wright v. State*, Okl.Cr., 505 P.2d 507, *Snow v. State*, Okl.Cr., 453 P.2d 274, and *Crosswhite v. State*, Okl.Cr., 317 P.2d 781. The record in the instant case reveals that a motion for continuance was heard by the trial court on the day before trial but does not indicate that an affidavit was filed in support of same. The failure to file said affidavit is fatal.

■ The Court would also note that the expected testimony of Mr. and Mrs. Martel was stipulated to during trial and the stipulation was read to the jury. Therefore it is our opinion that in the instant case the defendant was not prejudiced by the physical absence of the witnesses.

For both of the reasons set out above we find that the defendant received a fair and impartial trial before a jury, that no material right of the defendant was prejudiced and that the judgment and sentence appealed from should be and the same is hereby AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.