Kenneth Ray STANBERRY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–320.

Court of Criminal Appeals of Oklahoma.

Dec. 3, 1981.

Patti Palmer, Asst. Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Larry Oakes, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Kenneth Ray Stanberry, hereinafter referred to as the defendant, was convicted of Manslaughter in the First Degree, in Seminole County· District Court, Case No. S–CRF–78–14, was sentenced to ten (10) years' imprisonment, and he appeals.

On November 29, 1977, Seminole County Deputy Sheriffs were summoned to the house of the defendant by the defendant's brother, Ernie. Upon their arrival an investigation into the death of the defendant's wife, Alene, commenced. The deceased was discovered on a bed in the southwest bedroom of the couple's home. Death was caused by a stab wound to her throat severing her windpipe. The lifeless body exhibited signs of a struggle, i.e., bruised hands, additional wounds to the neck, bruised lip, a cut on the right hand and a cut between the webbing of deceased's ring and little finger of the right hand. These cuts and bruises were all fresh or new wounds, according to the pathologist. The police officers were able to determine that the deceased had been washed and cleaned prior to their arrival, and although the deceased's hair was still damp, blood was found matted therein. Broken furniture and glass were observed in the northwest bedroom of the home which also contained bloodstained bedding. Bloodstains were observed in the kitchen and on parts of the floor throughout the home. Bottles of vodka and wine that the deceased, defendant and Betty Stanberry had been drinking from earlier in the evening had been removed from the home and were retrieved by police from a storage area under an adjoining carport. Other areas of the house indicated that blood had been cleaned therefrom and items of bloodstained clothing, bedding and cleaning items from various parts of the home were seized by police. Both the defendant and Betty Stanberry bore fresh scratches on their hands. In his statement to police the defendant had maintained that he was awakened from a deep sleep by his wife, whom he thought to be suffering a heart attack. He noticed she was having a difficult time breathing and after some time searching, found a glycerine pill, which he put into her mouth. Thereafter, the defendant left his wife unattended and sought out the assistance of his brother. Upon their return to the residence the deceased failed to respond to attempts of revival and

she died. No murder weapon was ever found.

In his first assignment of error the defendant argues that the trial court committed fundamental error by not allowing defendant to call and examine his mother, Lucy Stanberry, as a defense witness. In his offer of proof, defendant submitted that the witness, if permitted, would have related a conversation she had with her daughter-in-law, Betty, wherein Betty stated that she and the deceased argued and that while arguing the deceased attempted to remove a knife from Betty's hand and was stabbed. The defendant contends that this statement was exculpatory to him and a declaration against Betty Stanberry's penal interest and was admissible under 12 O.S.Supp.1980, § 2803(24).

■ While it is true that Oklahoma has recognized a declaration against penal interest as admissible[1], and has codified the rule with the adoption of the Oklahoma Evidence Code, certain requirements must first be met before the declarant's statement is admissible at trial.[2] The declarant must be unavailable to testify at trial and, "unavailability" is defined under Section 2804 of the code.

In the matter now before us the declarant, Betty Stanberry, was not "unavailable" but instead, was called as a witness by the defendant and denied making any statement inculpating herself. As a matter of record, the witness testified unequivocally that she made no such statement to the defendant's mother, Lucy Stanberry.

The defendant sought to admit this statement under Section 2803(24), which permits the admission of certain trustworthy statements (hearsay) when the declarant is available to testify at trial.[3] We need only state that the reason for the requirement is obvious: If the person exposing himself to criminal liability is available to testify he should be brought into court so the jury can hear the testimony directly. The defendant ar-

gues that irrespective of the availability of the declarant as a witness the Supreme Court decision of *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), required the testimony to be admitted and, since it was inadmissible under Section 2804, its inclusion was properly moved for under Section 2803(24).

*Chambers* arose out of the conviction of one Leon Chambers of the crime of murder. He was convicted of having murdered a policeman during a riot in Woodville, Mississippi, by shooting him four times in the back with a .22 caliber revolver. He maintained his innocence at all times.

The appellant Chambers was convicted in a trial which he claimed was lacking in due process on two grounds: first, that he was not allowed to cross-examine one McDonald, who had confessed to the crime (and whom Chambers called as a witness when the State did not do so), since under Mississippi law a party may not impeach his own witness; and second, that he was not permitted to introduce the testimony of the persons to whom McDonald had confessed the crime, on the basis that such testimony was hearsay. The Supreme Court there held:

We conclude that the exclusion of this critical evidence coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that *under the facts and circumstances of this case* the rulings of the trial court deprived Chambers of a fair trial.

1. *Howard v. Jessup*, 519 P.2d 913 (Okl.1973).

2. See: 12 O.S.Supp.1980, § 2804(B)(3)

3. An identical provision is embodied in Section 2804(B)(5). The same standards and evidentiary principles apply under Section 2803(24) and 2804(B)(5).

The judgment is reversed and the case is remanded to the Supreme Court of Mississippi for further proceedings not inconsistent with this opinion. (Emphasis added) *Chambers v. Mississippi*, supra at 302–3, 93 S.Ct. at 1049.

What *Chambers* did was to constitutionally mandate use of the declaration against penal interest exception to the hearsay rule when the evidence offered under that exception equates with the objective special circumstances found in *Chambers*, and the admission of such evidence is necessary to prevent manifest injustice. See, *State v. Gardner*, 13 Wash.App. 194, 534 P.2d 140 (1975).

■ In *United States v. Mathis*, 559 F.2d 294 (5th Cir. 1977), Federal Rule of Evidence 803(24), which is identical to Oklahoma's provision, 2803(24), was discussed as follows:

> While it has been contended that availability is an immaterial factor in the application of Rule 803(24), this argument is wide of the mark. Although the introductory clause of Rule 803 appears to dispense with availability, this condition re-enters the analysis of whether or not to admit statements into evidence under the last subsection of Rule 803 because of the requirement that the proponent use reasonable efforts to procure the most probative evidence on the points sought to be proved. Rule 803(24), thus, has a built-in requirement of necessity. Here there was no necessity to use the statements when the witness was within the courthouse. The trial court erred in overlooking this condition of admissibility under Rule 803(24).

> \* \* \* \* \* \*

> Rule 803(24) was designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere. Yet tight reins must be held to insure that this provision does not emasculate our well developed body of law and the notions underlying our evidentiary rules. The trial court's ruling would lead down the later impermissible path.

In order for evidence to be admitted pursuant to Section 2803(24), five conditions must be met: (1) The proponent of the evidence must give the adverse party the notice specified within the statute; (2) The statement must have circumstantial guarantees of trustworthiness equivalent to the 23 specified exceptions listed in Section 2803; (3) The statement must be offered as evidence of a material fact; (4) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; (5) The general purposes of the evidence code and the interests of justice must be served by the admission of the statement into evidence.

■ In the case at bar no notice was given, although the record clearly reveals and reflects that notice of some type could well have been given several days before trial commenced. This was not the case, however. To the contrary, the matter was not made known to counsel for the State until the attempt was made to put the evidence before the jury. This, in and of itself, was in violation of the rule. The declaration was not a confession of guilt, indeed an argument could be advanced that it was exculpatory rather than inculpatory to the declarant. The statement, if made, was by a codefendant whose case was pending trial, a severance having been granted from defendant's trial. There is nothing about the statement or the circumstances in which it was given to indicate the required high probability of trustworthiness. The statement was allegedly made some two years after the homicide occurred. The statement was allegedly made to the defendant's mother sixteen days before trial was to commence. The trustworthiness of a statement should be analyzed by evaluating the facts corroborating the veracity of the statement, the circumstances in which the declarant made the statement, and the incentive he or she had to speak truthfully or falsely; and careful consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness. *United States v. Bailey*, 581 F.2d 341

(3rd Cir. 1978). For the above and foregoing reasons the statement was correctly excluded as hearsay, not meeting the minimal evidentiary criteria as set forth above and as provided by the code, nor the constitutional necessity test set forth in *Chambers*. We need point out, however, that when a situation such as this arises within the trial courts of this state, it is the duty of the trial judge to excuse the jury at that time and make a finding under the rules of our evidence code which necessitates appropriate consideration thereunder, irrespective of whether said evidence is sought to be introduced by the State or by an accused.

In his next assignment of error the defendant contends that the verdict is contrary to the law and the evidence and should therefore be reversed. In support thereof he cites *Brookins v. State*, 602 P.2d 215 (Okl.Cr.1979), wherein this Court found no evidence, direct or circumstantial, that the accused in fact participated in the homicide. The strongest evidence in the cited case was Brookins' statement that he "might have" participated in the homicide which he later denied, leaving no evidence whatsoever that he was involved. Supported by the results of a paraffin test, which negated presence of gunpowder on defendant's hands, the evidence raised only a suspicion of guilt and therefore was insufficient to support the verdict rendered therein.

█ We are of the opinion that the evidence in this case is sufficient to sustain the judgment and sentence, and that the *Brookins* decision is not in point. It is true that the verdict is based upon circumstantial evidence, but the jury, having seen the witnesses upon the stand and having observed their demeanor, having heard the conflicting testimony that was given in this case and having had opportunity to consider all the other information pertaining to the killing, was in a much better position to judge this testimony than is an appellate court.

The evidence, with reference to the defendant not noticing his wife's cut throat and severed windpipe, coupled with the fact that he left her unattended, is inherently incredible. Testimony of the pathologist describing the number of wounds and bruises upon the body of the deceased, the fresh cuts upon the deceased's hands, and the makeshift attempt to clean the home before police officers arrived, are all simply inconsistent with the defendant's statement, and show strong circumstantial evidence that defendant participated in effecting the death of his wife. We do not feel justified in holding the evidence insufficient to sustain the judgment and sentence. See, *Griffin v. State*, 79 Okl.Cr. 85, 151 P.2d 812 (1944).

█ We need not address defendant's third assignment of error, that improper questions were asked of a defense witness, for the matter has been waived by his failure to raise same in his petition in error. *Mintz v. State*, 593 P.2d 1093 (Okl.Cr.1974).

█ The defendant lastly complains that the charge to the jury on the issue of co-participation with another was erroneous, for it allowed the jury to find him guilty either as a sole perpetrator of the crime or as one who aided and abetted in the commission thereof.[4] No Oklahoma authority is cited in support hereof and, since a person who aids or abets the commission of a crime is responsible as a principal in this state, the instruction was a proper statement of the law. 21 O.S.1971, § 172. The jury instruction was not erroneous.

In conclusion, we observe the record is free of any error which would justify reversal, and the judgment and sentence is accordingly AFFIRMED.

BRETT, P. J., and CORNISH, J., concurs.

---

4. Jury Instruction Five provided:
　If you find, beyond a reasonable doubt, that this defendant either committed the crime himself, procure [sic] it to be done, or aided, assisted, abetted, advised or encouraged the commission of this crime, then you may find him guilty as charged in the information.