Christian Ray WEST, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–1094.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1990.

Irven R. Box, Box & Clowdus, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen. and Steven Spears Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LUMPKIN, Judge:

Appellant Christian Ray West Was tried by jury and convicted of Manslaughter in the First Degree in violation of 21 O.S. 1981, § 711, Case No. CRF-87-6629, in the District Court of Oklahoma County. The jury recommended punishment of four (4) years imprisonment and the trial court sentenced accordingly. It is from this judgment and sentence that Appellant appeals. We affirm.

The decedent was killed during the early morning hours of November 14, 1987, when he was thrown from the back of a pickup truck driven by Appellant. Prior to this event, Teddy Jay and his cousin, the decedent, David Stone were driving away from a bar in Oklahoma City when they saw a black pickup being driven down Reno in an erratic manner as if it were "trying to start something" with a white car in front of it. The black pickup suddenly changed lanes and moved in behind Mr. Jay's vehicle, clipping the rear corner. The pickup then sped away. In an attempt to get the tag number of the pickup, Mr. Jay followed it to a dead end street, Virginia Drive, where Appellant stopped the truck. Jay and the decedent pulled in behind the pickup and approached the Appellant. Jay testified that he inquired of Appellant why he had hit his car and if he had insurance. When Appellant refused to provide proof of insurance, the decedent attempted to enter the vehicle from the passenger side and look in the glove compartment. Meanwhile, Appellant stumbled out of the driver's seat, emitting a strong odor of alcohol. Mr. Jay stated that he saw a twelve pack of beer in the front seat, half of which was empty. Jay proceeded to one of the nearby houses to call the police. He returned before making the call however, when he heard the truck start up. Mr. Jay subsequently turned the truck off, retrieved the keys from the ignition, and gave them to the decedent.

Mr. Jay once again attempted to call the police but again heard the engine of the truck. He looked up to see the pickup drive off across a yard and over a mailbox

only to get stuck in a fence. As Appellant worked to free the truck, the decedent jumped into the bed of the truck. Freeing the truck from the fence, Appellant sped off with the decedent in the back. Mr. Jay followed the Appellant and observed the Appellant drive in a zig-zag manner, as if attempting to throw the decedent out of the truck. At the intersection of Reno and Meridian, the Appellant struck a Cadillac, causing the Cadillac to slide into a nearby ditch, and the decedent to be thrown out of the truck onto the pavement. The decedent suffered fatal head injuries. A blood alcohol test was performed on the Appellant approximately two hours later at the hospital with the results showing .19%.

The Appellant testified that he could not remember anything about the incident. He stated that the last thing he remembered was leaving his home at approximately 8:00 p.m. and then waking up hours later in the hospital.

■ In his first assignment of error, Appellant alleges the trial court erred in failing to give his requested jury instructions on self-defense. The Appellant offered jury instructions on the defense of duress and self-defense. The trial court accepted the instructions on duress but rejected those on self-defense.

■ It is well established that a defendant is entitled to any instructions on his theory of defense, provided such theory is tenable as a matter of law, or finds support in the evidence. *Green v. State,* 611 P.2d 262, 266 (Okl.Cr.1980); *Gann v. State,* 397 P.2d 686, 690 (Okl.Cr.1964). If there is no evidence in the record to support an instruction, it should not be given. *Coulter v. State,* 721 P.2d 818, 819 (Okl.Cr.1986). Self-defense is an affirmative defense which must be raised by the defendant unless the State's case shows that the homicide was justifiable. When the record reveals no evidence of self-defense, the trial court is not bound to instruct the jury on that defense. *Holloway v. State,* 712 P.2d 68, 69 (Okl.Cr.1986).

■ A thorough review of the record fails to support Appellant's contention.

The evidence presented by the State shows that the Appellant initiated the confrontation by his reckless driving and striking the Jay vehicle. Self-defense is not available to a person who is the aggressor or who enters into mutual combat. *Ruth v. State,* 581 P.2d 919, 921 (Okl.Cr.1978); *Jenkins v. State,* 80 Okl.Cr. 328, 161 P.2d 90, 96 (1945).

The only evidence of self-defense came from the testimony of Jerry Crockett who was visiting a friend on Virginia Drive. He testified that he heard tires squealing and looked out the window to see two men exit a car and walk up to a pickup truck. The two men from the car shouted at the man in the pickup until he exited his vehicle. The two men then slapped the man from the pickup and pushed him around for approximately one minute until he returned to his pickup and drove off. Mr. Crockett admitted that he could not identify any of the men. On cross-examination, he testified that all three of the men were shouting at each other, but he never saw anyone knocked to the ground. We find that Mr. Crockett's testimony alone does not sufficiently establish the defense of self-defense. *Lumpkin v. State,* 683 P.2d 985, 987 (Okl.Cr.1984). The trial court was justified in refusing to give the instruction on self-defense. This assignment of error is therefore denied.

■ Appellant contends in his second assignment of error that the trial court erred in failing to grant a continuance in order for the defense to secure the testimony of the decedent's mother, Mrs. Pat Stone. At trial, defense counsel stated that Mrs. Stone had been served with a subpoena to appear at trial, but had failed to honor that subpoena. When counsel learned that she might not be a friendly witness and appear voluntarily defense counsel stated that due diligence had been used in attempting to locate her. Counsel refused the trial court's offer to issue a bench warrant and instead requested a continuance until Mrs. Stone could be located. Appellant's request was denied and defense counsel made an offer of proof that if called to testify Mrs. Stone would state that she had

a conversation with Teddy Jay after the incident wherein he admitted that he and the decedent had physically beat up the defendant on Virginia Drive. She would also testify that Teddy Jay had a bad reputation for truthfulness and that he was a habitual liar.

This Court has held on numerous occasions that a motion for continuance must be accompanied by an affidavit for the continuance in compliance with 22 O.S. 1981, § 584, and 12 O.S.1981, § 668. The record in this instant case reveals that a motion for continuance was heard by the trial court but does not indicate that an affidavit was filed in support of the same. The failure to file said affidavit is fatal. *Rogers v. State*, 721 P.2d 805, 807 (Okl.Cr. 1986); *Smith v. State*, 644 P.2d 106, 108 (Okl.Cr.1982); *Jones v. State*, 595 P.2d 1344, 1349 (Okl.Cr.1979); *Nichols v. State*, 555 P.2d 70, 72 (Okl.Cr.1976); *Crosswhite v. State*, 317 P.2d 781, 785 (Okl.Cr.1957).

Further, a motion for continuance is directed to the sound discretion of the trial court. Absent an abuse of that discretion, this Court will not disturb the ruling of the trial court. *Steele v. State*, 778 P.2d 929, 930 (Okl.Cr.1989). Our review of the record shows that the trial judge did not abuse his discretion in refusing to grant the continuance and Appellant has failed to show how he was prejudiced by that ruling.

Appellant argues that Mrs. Stone's testimony was critical in establishing his defense of self-defense and to impeaching the character of Teddy Jay. To the contrary, her testimony would not only fail to contribute any relevant information but was potentially prejudicial to the defense. If Mrs. Stone were to have testified consistent with the offer of proof made by the defense, the evidence would still be insufficient to entitle the Appellant to utilize self-defense. Assuming arguendo, Teddy Jay and the decedent engaged in fisticuffs with the defendant on Virginia Drive, evidence that the Appellant's reckless driving, both before and after that incident, indicate that Appellant was the aggressor and that he was not entitled to defend himself by attempting to throw the decedent from the back of the truck. Considering the impeachment of Teddy Jay, not only was Mr. Jay thoroughly cross-examined by the defense, but the defense was not prevented from presenting other witnesses to testify to the character of Mr. Jay.

However, we are not persuaded that Mrs. Stone would have testified consistent with the offer of proof. Mrs. Stone did appear and testify for the defense at the Sentencing Hearing. She stated that she was out of town when she was informed by her daughter that she had been served with a subpoena to appear in court. She denied knowing the date of the trial and denied leaving town to avoid testifying. Mrs. Stone also denied having any conversations with Teddy Jay or anyone else concerning the details of the incident or Teddy Jay's version of events. We fail to see how the Appellant was prejudiced by the exclusion of this testimony.

Further, if Mrs. Stone's testimony was critical to Appellant's defense, he was presented with the opportunity to ensure her appearance by accepting the trial court's offer to issue a bench warrant for her arrest. Counsel indicated that he knew before trial began that she was a potentially hostile witness. Any potential problems in acquiring her presence at trial could have been prevented by having the bench warrant issued. We have repeatedly held that the defense cannot profit by alleged errors he or his counsel in the first instance invited by their own conduct. *Staggs v. State*, 719 P.2d 1297, 1294 (Okl.Cr.1986), *Maynard v. State*, 625 P.2d 111, 113 (Okl. Cr.1981).

When Appellant was unable to obtain a continuance in order to secure Mrs. Stone's testimony, he attempted to admit her statements through the testimony of another witness, Benita Blevins. Mrs. Blevins would have testified that Mrs. Stone came to speak with the people on Virginia Drive about the incident and related to them her conversation with Teddy Jay. The trial court sustained the State's objection to this testimony ruling it was inadmissible hearsay. In his final assignment of error, Appellant alleges this ruling

was error and that the statements of Mrs. Stone were properly admissible under 12 O.S.1981, § 2804(B)(5), the residual exception to the hearsay rule. We disagree with Appellant and find that the trial court properly excluded the statements.

The admissibility of evidence is within the discretion of the trial judge, and unless a clear abuse of discretion is shown, reversal will not be warranted. *Ashinsky v. State*, 780 P.2d 201, 204 (Okl.Cr.1989). Hearsay testimony is admissible under Section 2804(B)(5) if the declarant is unavailable and the statement is not specifically covered by any of the foregoing exceptions but has equivalent circumstantial guarantees of trustworthiness. The court must determine that the statement is offered as evidence of a material fact and the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts.

Here, the statements of Mrs. Stone were offered as evidence of the fact that Teddy Jay and the decedent were the aggressors to such an extent that the Appellant felt it necessary to defend himself. However, the statements of Mrs. Stone as related through third parties lacked the necessary guarantees of trustworthiness. Section 2804(B)(5) is comparable to the residual exception of Section 2803(24). The trustworthiness of statements under both sections should be analyzed by evaluating the facts corroborating the veracity of the statement, circumstances in which the declarant made the statement and the incentive he or she had to speak truthfully or falsely. *Stanberry v. State*, 637 P.2d 892, 895 (Okl.Cr.1981).

No corroboration of Mrs. Stone's statements was presented. We reject Appellant's contention that the testimony of Jerry Crockett corroborated Mrs. Stone's statements as he was unable to identify any of the participants. Further, the time frame in which Mrs. Stone's statements were allegedly made was not established at trial. Mrs. Blevins testified that Mrs. Stone came to her neighborhood to speak with some of the residents but no evidence was offered as to the date of these statements.

It also became apparent during the trial that the families of Mrs. Stone and Teddy Jay were involved in a civil lawsuit over the decedent's death. Such a lawsuit could certainly provide an incentive for the parties to testify in a particular manner.

In light of the above considerations, the hearsay statements of Mrs. Stone lacked the guarantees of trustworthiness necessary for admission into evidence. Therefore, the trial court properly ruled the statements inadmissible and this assignment of error is denied.

Based upon the foregoing, the judgement and sentence is AFFIRMED.

LANE, V.P.J., and JOHNSON, J., concur.

BRETT, J., concurs in result.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting.

I must dissent to the main opinion for the reason that I find that the evidence warranted instructions of self-defense. The main opinion asserts that appellant was the aggressor and discounts the testimony of Jerry Crockett. It also overlooks the testimony of Rose Mary Gamblin who stated that she saw two men confronting the smaller (which would have been appellant) of the three and the smallest being punched by the tallest (Ted Jay). The testimony of the residents from Virginia Drive was consistent of having heard the squealing of tires and then yelling and cussing among the three men.

The instructions concerning self-defense would allow the jury to determine who was the aggressor and which witnesses were more credible. They would have informed the jury the rules for determining who had the right to use force and the amount of force which would have been allowed.

This Court has held many times as the main opinion sets forth that the instructions on a defendant's defense must be given when supported by the evidence. *Green v. State*, 611 P.2d 262 (Okl.Cr.1980) and *Carter v. State*, 560 P.2d 994 (Okl.Cr.

1977). Since there was evidence of self-defense, I believe that this case should be reversed in order that appellant's defense might be considered.