OSCN Found Document:SHAFFER v. CITY OF MUSKOGEE MERIT SYSTEM BD.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 SHAFFER v. CITY OF MUSKOGEE MERIT SYSTEM BD.
2016 OK CIV APP 64
Case Number: 113523
Decided: 09/23/2016
Mandate Issued: 10/20/2016
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2016 OK CIV APP 64, __ P.3d __

 

JACK SHAFFER, Petitioner/Appellant,
v.
CITY OF MUSKOGEE MERIT SYSTEM BOARD and CITY OF MUSKOGEE, OKLAHOMA, a Municipal Corporation, Respondents/Appellees.

APPEAL FROM THE DISTRICT COURT OF MUSKOGEE COUNTY, OKLAHOMA

HONORABLE NORMAN D. THYGESEN, TRIAL JUDGE

AFFIRMED

Douglas D. Vernier, JAMES R. MOORE & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Petitioners/Appellant
Thomas A. LeBlanc, Matthew B. Free, Benjamin D. Reed, BEST & SHARP, Tulsa, Oklahoma, for Respondents/Appellees

DEBORAH B. BARNES, JUDGE:

¶1 Petitioner/Appellant Jack Shaffer appeals from a Judgment of the district court affirming a decision by Respondent/Appellee City of Muskogee Merit System Board (Merit Board) upholding termination of his employment with Respondent/Appellee City of Muskogee, Oklahoma, a Municipal Corporation (the City). We affirm.

BACKGROUND

¶2 The present appeal concerns a physical altercation between Shaffer and Stanley Goodman (Goodman), another then employee of the City, while the two were at work on a Friday. Shaffer admitted he punched Goodman. Shaffer claimed Goodman entered a small office where Shaffer was completing some work-related paperwork. A heated discussion between the two ensued, then, according to Shaffer, Goodman pushed Shaffer as he attempted to stand and held Shaffer by his shirt suspending him backward over his chair. It was at this point, and fearing for his safety, that Shaffer stated he punched Goodman, wrestled him to the ground, and held him in a headlock until Goodman pleaded with Shaffer to let him go. Goodman, however, denied ever touching Shaffer while in the office and claimed Shaffer's physical attack was unprovoked.

¶3 No one was present during this incident; however, employees outside the office heard the argument and saw the two as they emerged from the office. These witnesses stated Shaffer was cursing and yelling at Goodman, that one employee stepped between the two, separating them, and led Shaffer to another location away from Goodman.

¶4 This physical altercation occurred on the same afternoon that Shaffer had earlier reported to two "leaders" (supervisors in his chain of command) that Goodman had verbally threatened to beat up Shaffer after Shaffer had instructed Goodman to perform a work task associated with their routine maintenance work on the City's sewer lines. One of the leaders disputed he was told about the physical threat to Shaffer, but merely that there was an argument between the two. The other leader, Scott Fletcher, specifically stated he was told by Shaffer about the physical threat made by Goodman against Shaffer. Fletcher testified he spoke to Shaffer about contacting the superintendent of the water plant and they agreed do so that Monday. He testified Shaffer said the verbal threat was a non-issue at that point. Neither leader was an exempt supervisor under the City's harassment policy, but the plant superintendent was.

¶5 On December 16, 2013, Shaffer was notified that as a result of the physical altercation the matter was set for a pre-termination hearing on December 19, 2013, and that Shaffer was entitled to have a representative present. This notice set forth the following alleged violations of the City of Muskogee Work Rules:

R-12 Discourteous, abusive, disrespectful or insubordinate language to supervisor(s), manager(s), or other employee(s), citizen(s) or other customer(s).

R-19 Violation of a safety rule or the performance of unsafe work practices.

R-29 Threatening, intimidating, coercing or interfering with other employees on the job.

R-30 Fighting during working hours.

R-39 Violation of any provision of the Muskogee Personnel Policies and Procedures Manual or established policies and procedures within the department.

R-42 Negligence, inefficiency or incompetence in the performance of job duties.

¶6 Shaffer appeared and was heard at the pre-termination hearing. He was subsequently notified by the City that his employment had been terminated for violation of the foregoing Rules and his last day of employment was December 23, 2013.[1]

¶7 Shaffer filed an appeal of the termination with the Merit Board. The Merit Board heard the testimony of five witnesses including Shaffer and had for its consideration the documents considered by the City in the pre-termination hearing. Following the presentation of the testimony and evidence, and after its deliberations in executive session, the Merit Board voted 2-1 to affirm the City's decision to terminate Shaffer's employment.

¶8 Shaffer then filed his petition for review of the Merit Board's decision in the district court. The City filed a motion to dismiss the petition claiming the district court lacked jurisdiction to hear the appeal because of a Muskogee City Code ordinance that stated the Merit Board's decisions were final and conclusive and not subject to appeal to any court. Shaffer responded arguing the district court had jurisdiction to review the Merit Board's decision. The district court denied the motion.

¶9 In addition to the parties' arguments at hearing, the district court had for its consideration the parties' appellate briefs and the record on appeal. The court subsequently entered its Judgment affirming the Merit Board's decision specifically stating the matter was not a trial de novo, but rather a matter for review of the actions of the City and was "limited to a determination of whether . . . any error of law was committed in the hearing and whether . . . the findings are supported by evidence." The district court found there was neither error of law nor fact and affirmed the Merit Board's decision.

¶10 It is from this Judgment that Shaffer appeals.

STANDARD OF REVIEW

¶11 The City contends the district court lacked jurisdiction to review the Merit Board's decision pursuant to the City Code. "Determination of jurisdiction is a question of law." State ex rel. Cartwright v. Okla. Ordnance Works Auth., 1980 OK 94, ¶ 4, 613 P.2d 476. Jurisdiction and other issues of law asserted on appeal are reviewed by this Court de novo. Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081.

¶12 When sitting as an appellate court in review of the Merit Board's decision, "[t]he proper standard of review for the district court . . . is whether errors of law were committed by the Merit System Board, and whether the board's findings are supported by the clear weight of the evidence." City of Muskogee v. Grayson, 1991 OK 101, ¶ 10, 818 P.2d 491.

ANALYSIS

I. District Court's Jurisdiction

¶13 The City argues the district court was without jurisdiction to review the decision of the Merit Board because "case law suggests that the right of appeal under 12 O.S. [2011] § 951 may be abrogated by municipal legislation." It cites In re White, 1960 OK 188, 355 P.2d 404, in support of its contention and asserts: "Where a municipality expressly provides that the determination of its Merit Board (or other type of civil service commission) is final and conclusive and the municipality specifically prohibits an employee's right to appeal from a Merit Board-like proceeding, the employee does not have the right to appeal under [§ 951]." It argues the White Court held "that a right to appeal did exist [in that case] because the charter of the City of Tulsa did not provide that the judgment of the city commission was 'final and conclusive and from which no appeal will lie.'"

¶14 The City points to § 48-109 of the City Code, titled "Grievance and arbitration procedures," which provides, in part, as follows:

(c) The merit system board shall upon the institution of a grievance convene and conduct a hearing and decision which finding and decision shall be final and conclusive and the proceedings before merit system board shall be reduced to writing and kept of record in the office of the city clerk. The decision of the board is final and binding and not subject to appeal to the city council or any court.

¶15 It is the last sentence of this provision - in particular, the language that the Merit Board's decisions are "not subject to appeal to . . . any court" - upon which the City relies for its assertion that the district court was without jurisdiction to hear the Merit Board appeal in this case.[2] The City charter, however, does not contain any such limiting language in reference to the Merit Board although it does assert that Merit Board decisions are "final."[3]

¶16 The White Court was not concerned with the issue raised in the instant case. While one of the issues before the Supreme Court was whether the district court had jurisdiction to hear an employee's appeal from the Civil Service Commission of the City of Tulsa, the issue before the Court turned on whether the Commission proceedings were an exercise of a judicial function or an administrative function. The Court stated:

In reviewing the transcript of proceedings before the Commission, we note witnesses were sworn and examined and cross examined by the respective attorneys; stipulations were made and approved by the Commission; objections to the admissibility of testimony were made and rulings entered; offers of proof were made and passed upon; exhibits were offered in evidence and accepted by the Commission and arguments were made by the respective attorneys. After a full hearing, the Commission made certain findings of fact upon which its ultimate conclusion was reached and these findings together with the conclusion and judgment were reduced to writing and filed. Every act of the Commission conformed to a hearing before a tribunal.

1960 OK 188, ¶ 6. In concluding the Commission was exercising a judicial function, the Court found the employee had a right to appeal pursuant to § 951. Id. ¶ 7.

¶17 There is no question the Merit Board was exercising a judicial function in the present case. However, the language from White upon which both parties rely, albeit reaching different conclusions as to its import, is the following:

In considering the first contention of the City, it is noted that Sec. 8 of art. XVI, an amendment to the charter of the City of Tulsa, does not provide that the judgment of the Commission is final and conclusive and from which no appeal will lie or does not specifically provide for an appeal from the Commission but does provide:

" . . . If after hearing the evidence, the commission shall find cause for disciplinary action it may approve or modify the action taken by the disciplinary authority, provided any right of appeal to the courts shall not be abrogated. . . ." (Emphasis.)

We then look to the statutes to determine if the right of appeal is warranted.

White, ¶ 5.[4] The Court then quoted § 951.

¶18 No ordinances were at issue in White; the only matter referenced was the charter and its amendment. We, therefore, cannot conclude from White alone that the City is precluded from restricting a party's right to appeal from Merit Board decisions by way of its ordinances. While the City recognizes the White Court specifically referenced the City of Tulsa's charter, not its municipal ordinances, the City offers no analysis for its argument that "municipal legislation" (i.e., a municipal ordinance) holds the same authority as a city's charter in "abrogating" the right to appeal set forth in § 951(a). That is, the City offers no analysis on appeal regarding the difference in language between its charter and the ordinance upon which it relies for its assertion the district court - and by extension this Court - was without jurisdiction to hear an appeal from the Merit Board.

¶19 Pursuant to the Oklahoma Municipal Code, a

"Municipality governed by charter" means any municipality which has adopted a charter in accordance with the provisions of the Constitution and laws of Oklahoma and at the time of adoption of the charter had a population of two thousand (2,000) or more.[5] Once a municipal charter has been adopted and approved, it becomes the organic law of the municipality in all matters pertaining to the local government of the municipality and prevails over state law on matters relating to purely municipal concerns[.]

11 O.S. 2011 § 1-102(1). The Oklahoma Municipal Code further provides:

Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict.

11 O.S. 2011 § 13-109.

¶20 As recently explained by the Oklahoma Supreme Court in Edwards v. City of Sallisaw, 2014 OK 86, 339 P.3d 870:

With the approval of a municipality's charter, the state has surrendered a portion of its authority by giving home-rule cities sovereignty over their "municipal affairs." The line between a chiefly municipal affair and a sovereign state interest is not well illuminated. We have recognized specific issues that are of sovereign state interest, including taxation, public education, control and regulation of public highways, and "state control over local police protection." . . . . We find where to draw the line in relation to what a home-rule city can authorize by city charter . . . from precedent and statutes.

Id. ¶ 11 (emphasis added) (citations omitted) (footnotes omitted). It is thus the charter, as the organic law of the municipality, to which we must look to determine whether the charter authorized abrogating a right to appeal from final decisions of the Merit Board. Only if it does must we then consider whether the charter may authorize abrogation of that right or whether such right is a sovereign state interest.

¶21 As reiterated by the Edwards Court:

A municipal charter is a home-rule city's governing constitution. We will look to rules of construction for constitutions in our analysis of [a municipality's] charter. As with Oklahoma's own governing document, we strictly construe a charter's terms to give effect to the intent of the framers and the people adopting it. Latting v. Cordell, 1946 OK 217, ¶ 0, 197 Okla. 369, 172 P.2d 397, 397 (Syllabus by the Court 1). If the terms are "plain and unambiguous," the meaning and intent of the document is found on its face "without resort to judicial rules" of construction. See Twin Hills Golf & Country Club, Inc. v. Town of Forest Park, 2005 OK 71, ¶ 6, 123 P.3d 5, 6-7. We look for the document's intent "in the instrument itself," and we must not "search for . . . meaning beyond the instrument." Latting, 1946 OK 217, ¶ 0, 172 P.2d at 397 (Syllabus by the Court 1).

Edwards, ¶ 9 (footnote omitted). "Absent an ambiguity, the intent of the framers and electorate is settled by the language of the provision itself and the courts are not at liberty to search for its meaning beyond the provision." Fent v. Fallin, 2014 OK 105, ¶ 10, 345 P.3d 1113. In In re Assessment of Personal Property Taxes Against Missouri Gas Energy, 2008 OK 94, 234 P.3d 938, the Oklahoma Supreme Court was called upon to interpret words in a constitutional provision for which no definition of the terms was provided. The Supreme Court explained:

In determining their meaning, we must bear in mind that a constitution is not made for the parsing of lawyers, but for the instruction of the people so that they may read and understand their rights and their duties. The words used in a constitutional provision are hence to be construed in a way that is most familiar to the ordinary people who adopted it. Words which do not of themselves denote that they are used in a technical sense, are to have their plain, popular, obvious, and natural meaning[.]

Id. ¶ 19 (footnotes omitted) (internal quotation marks omitted).

¶22 As previously quoted, after setting out the process by which appeals come before the Merit Board and the process before the Merit Board in hearing and deciding the matter before it, the City charter states the "[a]ction by the Board shall be final[.]" "Final" is defined as follows:

boundary, limit, end . . . 1a(1): not to be altered or undone . . . b(1): ending a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's findings but not precluding an appeal . . . (2): being a court finding that is conclusive as to jurisdiction and precluding the right to appeal to or to continue the case in any other court upon the merits . . . often used in the phrase final and conclusive . . . .[6]

¶23 The charter states Merit Board decisions are final, not that they are conclusive. Further, at the time the City charter was approved,[7] Oklahoma statutory law provided as follows: "A judgment rendered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law." 12 O.S. 1971 § 951.[8] Our review of the City charter reveals no conflict between the charter and § 951(a). Indeed, the charter simply makes clear Merit Board decisions are the end of a process that brought a matter to the Merit Board and allows for a hearing, the calling of witnesses, and a decision by the Merit Board. Nothing in the charter asserts such a final order is exempt from judicial review.[9] Because we conclude the charter has not abrogated the right to appeal Merit Board decisions to the district court,[10] the City ordinance purporting to do so is in conflict with the charter and invalid.[11]

¶24 We, therefore, conclude the district court did not err as a matter of law in overruling the City's motion to dismiss Shaffer's appeal for lack of jurisdiction.

II. District Court's Judgment

¶25 Shaffer contends the district court erred as a matter of law and fact in affirming the Merit Board decision to terminate his employment. He argues the evidence before the Merit Board "does not provide a just cause basis to terminate [him]." He contends the City argued he "violated the City's sexual harassment policy," thus, the City "fired [him] for violating the City's sexual harassment policy." From this premise Shaffer argues he was given no notice that violation of the sexual harassment policy was the reason sought for his termination; thus, the Merit Board, and then the district court, erred as a matter of law in basing his termination on that policy. Shaffer also argues "any reliance on the harassment policy to uphold the termination is also against the clear weight of the evidence," because no evidence was produced that he took any action "based on [the] characteristic[s] or traits [set forth in the policy]; rather, he was defending himself" against Goodman.

¶26 As to his self-defense argument, Shaffer argues that if his termination was based upon his defense of himself, "the termination is not supported by credible evidence and is contrary to law." He contends the evidence was undisputed that he was not the aggressor and that he was defending himself against an assault by Goodman; therefore, the Merit Board decision is "not just" and is against the clear weight of the evidence.

¶27 We disagree with Shaffer's assertion that the City sought his termination for his violation of the sexual harassment policy; consequently, we conclude his arguments as to the law and facts concerning the sexual harassment policy are without merit.[12] Instead, the City specifically sought to terminate Shaffer for, among other reasons, fighting during working hours in violation of City work rules.[13] Shaffer was timely notified of the City's reasons for terminating him. There is no dispute that, while at work, Shaffer punched Goodman, wrestled him to the ground, and put him in a headlock. There is no question Shaffer knew he could be fired for fighting during work hours. Essentially, Shaffer's argument is one in which he asserts his view of the evidence is the credible, undisputed evidence; consequently, his termination was unjustified. We do not agree.

¶28 First, Shaffer's assertion that he acted in self-defense is a factual question.[14] While he asserts he was not the aggressor and that he reacted to a physical assault by Goodman, other evidence and testimony presented to the Merit Board either contradicts his presentation of the matter or allows for reasonable inferences to be drawn from the facts contrary to Shaffer's assertions.[15]

¶29 Second, we find unpersuasive Shaffer's argument that the City is responsible for his actions because "[i]t is [u]ndisputed" that Goodman's assault in the office on Shaffer was the result of the City failing to act on Shaffer's earlier report of Goodman's alleged verbal threat against him.[16] Shaffer's argument again presumes that the only reasonable interpretation of the facts presented to the Merit Board is his assertion that Goodman physically assaulted him in the office. Regardless of how adamant Shaffer is about that unobserved interaction, the clear weight of the evidence supports the Merit Board's contrary determination. Grayson, 1991 OK 101, ¶ 10.

¶30 Based on our review of the record, we conclude the Merit Board's decision to uphold the City's termination of Shaffer is not contrary to law or clearly against the weight of the evidence; consequently, the trial court did not err in affirming the Merit Board's decision.

CONCLUSION 

¶31 We conclude the district court had jurisdiction to review the Merit Board's decision to affirm the City's termination of Shaffer. We further conclude the district did not err in determining that the Merit Board's findings and decision were not contrary to law or against the clear weight of the evidence. Accordingly, we affirm. 

¶32 AFFIRMED.

THORNBRUGH, P.J., and RAPP, J., concur.

FOOTNOTES

[1] Goodman, a probationary employee, had also been terminated.

[2] We note that this ordinance appears within a larger article concerning collective bargaining and collective bargaining agreements.

[3] For example, § 4:11 of the City charter, titled "Rules and regulations," provides, in part, as follows:

(e) After serving the probation period and being confirmed as an employee entitled to the benefits of the Merit System, said employee may not be discharged from employment as an employee of the City of Muskogee except for cause and one so discharged shall have the right to appeal in writing in five days to the Merit System Board, which Board shall review within ten days of filing of the appeal, the cause for discharge and give the discharged employee and the Department Head an opportunity to be heard, and said parties may summon witnesses to be heard and after full hearing if the Merit System Board finds that said employee has been unjustly discharged, he or she shall be restored to their former position with full pay; from date of discharge. In event the Board finds the discharge of the employee was justified, the employee shall remain discharged from the date of the original discharge. Action by the Board shall be final except that a re-consideration of the Board's action may be had within 30 days of the date of the original decision upon the grounds of newly discovered evidence.

(Emphasis added.)

[4] Shaffer relies on the Court's Syllabus in which the Court stated:

Where a Civil Service Commission exercising a judicial function under an amendment to a city charter which does not provide that the judgment of such Commission shall be final and conclusive and does not prohibit appeals to the District Court, an appeal from the judgment of such commission to the district court is permissible under Title 12 O.S. 1951 § 951.

White, ¶ 0 (Syllabus by the Court).

[5] See also 11 O.S. 2011 § 13-101.

[6] Webster's Third New International Dictionary Unabridged 851 (2002 Merriam-Webster) (emphasis in original).

[7] The City charter was ratified on December 7, 1971, and approved by the governor on February 18, 1979.

[8] Section 951 was amended effective November 1, 1998, as follows:

(a) A judgment rendered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law.

(b) Unless otherwise provided by law, proceedings for review of a judgment or final order shall be commenced by filing a petition in the district court of the county where the inferior tribunal, board or officer rendered the order within thirty (30) days of the date that a copy of the judgment or final order is mailed to the appellant, as shown by the certificate of mailing attached to the judgment or final order.

12 O.S. 2011 § 951.

[9] This conclusion, as asserted by Shaffer, is consistent with the City's apparent understanding of the charter provision at least in cases prior to the present case. The City has itself appealed to the district court from an adverse Merit Board order. See, e.g., City of Muskogee v. Grayson, 1991 OK 101, 818 P.2d 491. Further, the jurisdictional challenge asserted in the present case was not raised by the City in defense of an employee's appeal of an adverse Merit Board decision to the district court, to the Court of Civil Appeals' review of the district court decision, or to the Supreme Court's further review sustaining the Merit Board's decision in Acevedo v. City of Muskogee, 1995 OK 37, 897 P.2d 256.

[10] Given our conclusion, we do not address the issue of whether a charter could so abrogate a party's access to the courts and supersede the state's general interest in the rights of all of its citizens to seek review of judicial determinations made by municipal boards, among others. See generally, Edwards, 2014 OK 86, ¶ 14.

[11] Section 2-19 of the City Code, titled "Form of government," provides:

The municipal government of the city shall be as prescribed by the Charter ratified on December 7, 1971, and approved by the governor on February 18, 1979. All powers of the city shall be exercised in the manner prescribed by the city Charter, by the city Code, state statute and in such manner prescribed by ordinances adopted by the city council, only if not in conflict with the city Charter.

(Emphasis added.)

[12] Nor do we find persuasive Shaffer's assertion that the Merit Board was misled and somehow confused by the City in believing that he, and not Goodman, was alleged to have made threatening comments earlier in the day of the incident. It is plain throughout the hearing that Shaffer's attorney presented Goodman's alleged statements as harassing to Shaffer and argued Shaffer followed the notification procedures of the harassment policy in informing his "supervisors" - though not the correct, exempt supervisors under the policy - of Goodman's alleged threats. In fact, Shaffer testified that he was referencing the "harassment" policy against Goodman because it was "the closest thing that we could find . . . within the [C]ity's policies that relates to my situation[.]"

[13] As to those other reasons, in arguing that no findings were made with respect to the alleged violations of the City's work rules, Shaffer points to no statutory or mandatory decisional authority that requires the City must prove all allegations of violations of its rules in order to prove it had just cause to terminate an employee. The Merit Board's summary of the evidence and testimony clearly reveals the events surrounding the physical altercation - the fight during working hours - and the City's zero-tolerance for fighting on the job.

Also unpersuasive are Shaffer's arguments that the district court order was erroneous because it upheld the Merit Board's decision though the Merit Board "did not make any findings to support its decision. . . . The Merit Board is expressly charged with making findings of fact to support its decision to uphold the termination and insofar as it fail[ed] to do so, it failed to carry out its duty." Shaffer cites no statutory or decisional authority for his assertion about the Merit Board's required duty to make findings of fact. The charter provides in § 4:11(e), in part, as follows:

after full hearing if the Merit System Board finds that said employee has been unjustly discharged, he or she shall be restored to their former position with full pay; from date of discharge. In event the Board finds the discharge of the employee was justified, the employee shall remain discharged from the date of the original discharge.

(Emphasis added). The City Code provides, in part: "The merit system board shall upon the institution of a grievance convene and conduct a hearing and decision which finding and decision shall be final and conclusive and the proceedings before merit system board shall be reduced to writing and kept of record in the office of the city clerk." Shaffer concedes the Merit Board did reduce to writing its 2-1 decision to uphold the City's decision to terminate him and set forth a five-page summary of the facts upon which it based that decision.

As argued by the City, in Civil Service Commission of the City of Tulsa v. Gresham, 1982 OK 125, 653 P.2d 920, the Oklahoma Supreme Court, in a case dealing with a Merit Board-type commission, explained:

Under these circumstances, only the ultimate facts and the conclusions drawn therefrom are necessary to afford a judicial review. Specific or evidentiary facts and the relative weight given them by the Commission are unnecessary in order for the district court to review whether errors of law were committed in the hearing before the Commission and whether its findings and conclusions are supported by a preponderance of the evidence as contained in the transcript. Neither are the proceedings before the Commission of such a technical or specialized nature as to require expertise beyond the expected understanding of a court. We therefore hold that the findings and decision of the Commission were sufficient for judicial review by the district court.

Id. ¶ 23 (footnotes omitted). As had the Supreme Court in Gresham, we conclude the findings and decision of the Merit Board were sufficient for judicial review by the district court in its review of the transcript, evidence, and arguments by the parties.

[14] Shaffer relies on both criminal law and civil law definitions of self-defense that recognize self-defense is an affirmative defense. See, e.g., West v. State, 1990 OK CR 61, ¶ 6, 798 P.2d 1083 ("Self-defense is an affirmative defense which must be raised by the defendant . . . .") (citation omitted); Id. ¶ 7 ("Self-defense is not available to a person who is the aggressor or who enters into mutual combat.") (citation omitted).

[15] In his written account of the events, Goodman asserted Shaffer punched him though Goodman claimed he never touched Shaffer. Goodman asserted there was no assault and battery by him. Although Shaffer asserts this statement was hearsay and erroneously considered by the Merit Board in contravention of its rules regarding affidavits, Shaffer never objected to this alleged hearsay evidence at the time of its reference, and the Merit Board's rules also permit it to consider hearsay. Further, not only did Shaffer himself testify that Goodman asserted Shaffer hit him "for no reason," and that "[Goodman] had made no contact with [him] at all whatsoever," other witnesses also testified they heard Goodman make this statement when he and Shaffer emerged from the office. These witnesses also heard Shaffer cursing at and approaching Goodman, and one employee stated he stepped between Shaffer and Goodman to separate the men and escorted Shaffer to another room. Although Shaffer testified as to what Goodman said and did in the office, no one was present when the punch was struck but those two men. However, witnesses who were outside the office heard the two men loudly arguing, and Shaffer himself admitted more than just a punch was thrown; he and Goodman fell to the ground, Shaffer sat on Goodman and put him in a headlock until Goodman pleaded with Shaffer to let him go. Shaffer also testified he did not want to tell Goodman that he had reported Goodman's verbal threats because he feared Goodman would become angry. However, he then testified that while he was in a heated discussion with Goodman inside a small room, he decided to tell Goodman the matter had been reported and agreed that "sure enough, when [he] did tell [Goodman] about it, it seemed to make [Goodman] more angry at that moment." While Shaffer has a view about how these events should be believed, the Merit Board did not view Shaffer's actions as anything but a fight.

The Merit Board also heard Shaffer's testimony about a Facebook entry he agreed was "legitimately off [his] Facebook." The discussion involved "whether or not you approach another mand (sic)" and states "I am the kind of guy that doesn't let you throw the first punch unless I am on the clock." In answer to a question whether that statement was one he would have posted, Shaffer replied, "Yeah, I mean, if you read another man's body language, yeah. I mean, that looks like that's what I said." While Shaffer may assert these words mean he would not fight at work, his statement also leads to the reasonable inference that Shaffer would not hesitate to hit another man first in an encounter.

[16] Further, as previously noted, Shaffer never informed his exempt supervisor about Goodman's alleged "harassing" verbal threats as required by the harassment policy. While the exempt supervisor may not have been on site, exempt "supervisory personnel are always on call." Shaffer never stated he was prevented from notifying the correct supervisor or that he was unaware who that person was. In fact, in his conversation with one of the non-exempt leaders in his chain of command, Shaffer stated: "I think we need to bring [Goodman's verbal threats] up to" that exempt supervisor.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1990 OK CR 61, 798 P.2d 1083, WEST v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 101, 818 P.2d 491, 62 OBJ 3005, City of Muskogee v. Grayson
Discussed at Length
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 1946 OK 217, 172 P.2d 397, 197 Okla. 369, LATTING v. CORDELL
Discussed at Length
 1960 OK 188, 355 P.2d 404, IN RE WHITE
Discussed at Length
 1995 OK 37, 897 P.2d 256, 66 OBJ 1341, Acevedo v. City of Muskogee
Discussed
 2005 OK 71, 123 P.3d 5, TWIN HILLS GOLF & COUNTRY CLUB, INC. v. TOWN OF FOREST PARK
Discussed
 2008 OK 94, 234 P.3d 938, IN THE MATTER OF THE ASSESSMENT OF PERSONAL PROPERTY TAXES
Discussed
 2014 OK 86, 339 P.3d 870, EDWARDS v. CITY OF SALLISAW
Discussed at Length
 2014 OK 105, 345 P.3d 1113, FENT v. FALLIN
Discussed
 1980 OK 94, 613 P.2d 476, State ex rel. Cartwright v. Oklahoma Ordnance Works Authority
Discussed
 1982 OK 125, 653 P.2d 920, Civil Service Com'n of City of Tulsa v. Gresham
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 1-102, Definitions
Cited
 11 O.S. 13-101, Municipalities May Adopt Charter
Cited
 11 O.S. 13-109, Charter Controls Over Conflicting Laws
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 951, Judgment by Court Inferior in Jurisdiction to District Court
Discussed at Length