**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 19, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

STEPHEN PARMENTER,

Plaintiff - Appellant,

v.

CITY OF NOWATA, OKLAHOMA,

Defendant - Appellee.

No. 20-5113
(D.C. No. 4:19-CV-00431-TCK-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Plaintiff Stephen Parmenter was fired in 2019 from his job as the fire chief of

the City of Nowata, Oklahoma. He sued the City, alleging a denial of procedural due

process. The United States District Court for the Northern District of Oklahoma

granted the City's motion for summary judgment, holding (1) that Mr. Parmenter did

not have a protected interest in his job and therefore was not entitled to procedural

due process, and (2) that in any event he was provided adequate process. Mr.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Parmenter appealed. We reverse and remand for further proceedings to determine whether Mr. Parmenter had a protected interest in his position, and if so whether he received sufficient process. Reconsideration is necessary because the district court failed to address two critical issues.

Before his firing, Mr. Parmenter had served as the City fire chief for five years. At all relevant times Melanie Carrick was Nowata city manager—the head of municipal government appointed by the City's board of commissioners. On August 31, 2017, Mr. Parmenter received a written reprimand from Ms. Carrick alleging the following infractions:

> Altering of employee time sheets, falsification of own time sheet, interfered with the City's relationship with the Harmon Foundation, providing false information to supervisor, hindering the accounting process by holding checks that need to be deposited and not turning them in for deposit in a timely manner, allowing multiple employees to take comp time that they had not accrued, issuance of comp time not in accordance with City personnel manual, fostering and allowing to continue an environment of low morale in department, creating feelings of fear of retribution or retaliation in employees in the department[,] creating a harassing, hostile and threatening work environment for employees, non-compliance with hiring policy, holding volunteer pay until dues are paid, scheduling part-time workers more than part time hours.

Aplt. App. at 27. Because of these alleged infractions, Ms. Carrick removed Mr. Parmenter from his parallel role as the City's director of emergency medical services (EMS), she instructed him to work at least one shift per week "as a regular fireman to foster better relationships with employees in the department and boost morale," *id.*, and she warned him that further infractions could result in discipline up to termination. The reprimand has a checked box labeled "Final Warning." *Id.* A

2

paragraph labeled "Consequences of Further Infractions" states that the reprimand was "the only warning that [Mr. Parmenter] will receive due to the serious and damaging nature of the offenses." *Id.*

After the reprimand Mr. Parmenter continued serving as fire chief for over one-and-a-half years. Through 2018 Ms. Carrick and Mr. Parmenter had various conversations about time-sheet issues, compensatory-time procedures (by which employees could opt for time off in lieu of overtime pay), and Mr. Parmenter's responsibilities as fire chief. Mr. Parmenter never worked a shift as a regular firefighter, having explained to Ms. Carrick that he thought it would interfere with his other duties. And the record reflects—though neither party clarifies—that Mr. Parmenter resumed his duties as EMS director at some point after August 2017.

In March 2019 Ms. Carrick heard new complaints about Mr. Parmenter's performance. Ms. Carrick learned that some workers were following improper procedures in filling out time sheets, and she suspected Mr. Parmenter had authorized the impropriety. EMS employees and firefighters reported Mr. Parmenter's dismissive attitude toward their objections to a new schedule he had created and his refusal to consider their requests for accommodation under the new schedule. The employees likewise complained of "very low" morale in the EMS and fire departments, Mr. Parmenter's abrasive "[m]y way or the highway" attitude, and Mr. Parmenter's favoritism toward one subordinate. *Id.* at 51 (internal quotation marks omitted). In addition, one firefighter told Ms. Carrick that he was afraid to fill out the City's employee questionnaire because he had previously been retaliated against after

3

filling out a similar survey. The City's police chief submitted a memorandum to Ms. Carrick that corroborated some of the employees' concerns.

On April 8, 2019, in a face-to-face meeting with Mr. Parmenter, Ms. Carrick informed him that he was terminated. Although she testified at her deposition that Mr. Parmenter had an "opportunity to speak," *id.* at 87, his response was brief. He asked, "Really?" and "Why?" *Id.* at 112. Ms. Carrick answered, "It's on the sheet"—referencing the termination letter. *Id.* But the letter stated only that he was being terminated "for the good of the service" and that in Ms. Carrick's opinion "good and sufficient cause exists." *Id.* at 56. Mr. Parmenter did not say anything more and left.

"To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Whether a plaintiff has a protected property interest is a question of state law. *See id.* "[I]f state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest." *Id.*

The district court held that Mr. Parmenter lacked a property interest in continued employment as the City's fire chief. The court recognized that an Oklahoma statute provides: "The chief and members of all paid municipal fire departments shall hold their respective positions unless removed for a good and sufficient cause as provided by applicable law or ordinance." Okla. Stat. tit. 11,

4

§ 29-104. But it held that this state law was overridden by the City of Nowata's

Charter because of the Oklahoma home-rule doctrine. "The Oklahoma Constitution

empowers Oklahoma citizens who live in municipalities exceeding 2,000 people to

'frame a charter for their own government, consistent with and subject to the

Constitution and laws of this State.'" *Edwards v. City of Sallisaw*, 339 P.3d 870, 874

(Okla. 2014) (quoting Okla. Const. art. 18, § 3(a) (brackets omitted)). Such

municipalities are referred to as "home-rule cities." *Id.* The City of Nowata is a

home-rule city. For home-rule cities Oklahoma law provides:

> Whenever a charter is in conflict with any law relating to municipalities in
> force at the time of the adoption and approval of the charter, the provisions
> of the charter shall prevail and shall operate as a repeal or suspension of the
> state law or laws to the extent of any conflict.

Okla. Stat. tit. 11, § 13-109. Under this home-rule statute Oklahoma "has surrendered

a portion of its authority by giving home-rule cities sovereignty over their municipal

affairs." *Edwards*, 339 P.3d at 874 (internal quotation marks omitted).

The district court said, "[B]ecause the Nowata's City Charter provides that all

City employees are at will and may be fired with or without notice, its provision

prevails over 11 O.S. § [29]-104." Aplt. App. at 139. But we do not see how the court

concluded that the charter so provides. The only pertinent language of the charter

assigns the city manager the "powers and duties" of "appoint[ing] and remov[ing] all

Heads of Departments, and all subordinate officers and employees of the City." *Id.*

at 59. The "at will" language apparently comes from the City's personnel manual—

an informal guidance document that describes itself as "for information only"—

5

which says, "No employee or representative of the City has any authority to enter into an employment contract to change the 'at will' employment relationship, or to make any agreement contrary to the foregoing." *Id.* at 63. The manual also states, "All employees must remember that employment may be terminated with or without cause or notice, at any time by the employee or the City of Nowata." *Id.* at 65.

We think it clear that the manual is not part of the charter.[1] *See Shaffer v. City of Muskogee Merit Sys. Bd.*, 394 P.3d 244, 247–51 (Okla. Civ. App. 2016) (refusing to consider municipal ordinance in determining whether conflict existed between home-rule charter and state law). Perhaps the district court thought the charter language implied that City employment is at will, but it did not explain why. The City's brief in this court argues that the charter language implies at-will employment, and that argument may ultimately prevail. We think it best, however, to develop the issue in district court to afford that court the opportunity to decide the matter in the first instance. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) ("Although this court may affirm on any ground apparent in the record, affirming on legal grounds not considered by the trial court is disfavored.").

The district court held alternatively that even if Mr. Parmenter had a property interest in his position, he was fired for "good and sufficient cause." Aplt. App. at 140. But this ruling concerns only the substantive correctness of the firing, not the

---

[1] Mr. Parmenter may have failed to clearly raise this point below, but the City does not claim on appeal that this argument was not preserved. *See Johnson v. Spencer*, 950 F.3d 680, 707 (10th Cir. 2020) (we may excuse party's forfeiture if opposing party neglects to argue lack of preservation).

fairness of the procedures afforded Mr. Parmenter. Due process requires before a public employee's termination, "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (internal quotation marks and brackets omitted). If the employer provides significant pretermination process, the posttermination process need not be as elaborate. *See Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996). The district court did not analyze the adequacy of the procedures provided to Mr. Parmenter—either pretermination or posttermination.

The City suggests that we can affirm by determining ourselves that Mr. Parmenter was afforded due process. It contends that the August 2017 warning letter gave Mr. Parmenter adequate notice. But the cases cited by the City do not wholly persuade us that a document from August 2017 can serve as pretermination notice for a firing that occurs one-and-a-half years later based on intervening events. In any event, the issue is best resolved by the district court in the first instance. *See Rimbert*, 647 F.3d at 1256. If the district court on remand determines that Mr. Parmenter had a protected property interest in his position, it should consider procedural adequacy.

We **REVERSE** and **REMAND** for further consideration of the proper interpretation of the City Charter and, if Mr. Parmenter establishes a protected interest, whether the City afforded him adequate process.

Entered for the Court


Harris L Hartz
Circuit Judge